# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ Centre _____ **County**

| For Prothonotary Use Only: | TIME STAMP |
|---|---|
| Docket No: 2018-25 | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

**Lead Plaintiff's Name:**
Linda Kimble, Administratrix of the Estate of Norman Kimi

**Lead Defendant's Name:**
Owner Operator Independent Drivers Association, Inc.

**Are money damages requested?** ☒ Yes  ☐ No

**Dollar Amount Requested:**
(check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes  ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney: David B. Consiglio

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other:

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☒ Other: Insurance/Bad Faith

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:



IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

LINDA KIMBLE, Administratrix of the
Estate of NORMAN E. KIMBLE,

     Plaintiff,

     v.

OWNER OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC., ATLANTIC
SPECIALTY INSURANCE COMPANY,
INTER-AMERICAS INSURANCE CORP., INC.,
and GREAT FIDELITY LIFE INSURANCE
COMPANY,

     Defendants.

)))))))))))))))))))))))))))))))

No. *2018-25*

Type of Case:  CIVIL ACTION

_____ Medical Professional Liability
     Action (check if applicable)

Type of Pleading:
**COMPLAINT**

Filed on Behalf of Plaintiff:
Linda Kimble, Administratrix of the
Estate of Norman E. Kimble

Counsel of Record for this Party:
David B. Consiglio, Esquire
Pa. I.D. No. 72772
John W. Lhota, Esquire
Pa. I.D. No. 319466
**Campbell, Miller, Williams,
Benson & Consiglio, Inc.**
720 S. Atherton St., Ste. 201
State College, PA 16801
814-234-1500 TEL
814-234-1549 FAX
dconsiglio@mkclaw.com
jlhota@mkclaw.com

**JURY TRIAL DEMANDED**

IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

| | | |
|---|---|---|
| LINDA KIMBLE, Administratrix of the<br>Estate of NORMAN E. KIMBLE, | ) | |
| | ) | |
| | ) | No. *2018-25* |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| OWNER OPERATOR INDEPENDENT | ) | |
| DRIVERS ASSOCIATION, INC., ATLANTIC | ) | |
| SPECIALTY INSURANCE COMPANY, | ) | |
| INTER-AMERICAS INSURANCE CORP., INC., | ) | |
| and GREAT FIDELITY LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE TO DEFENDANTS

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, OR CANNOT AFFORD TO HIRE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

**COURT ADMINISTRATOR**
CENTRE COURTY COURTHOUSE
ALLEGHENY STREET
BELLEFONTE, PA 16823
(814) 355-6727

John W. Lhota, Esquire

IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

LINDA KIMBLE, Administratrix of the )
Estate of NORMAN E. KIMBLE,        )
                                   )
                Plaintiff,         )        No. 2018-25
                                   )
        v.                         )
                                   )        **JURY TRIAL DEMANDED**
OWNER OPERATOR INDEPENDENT          )
DRIVERS ASSOCIATION, INC., ATLANTIC )
SPECIALTY INSURANCE COMPANY,        )
INTER-AMERICAS INSURANCE CORP., INC., )
and GREAT FIDELITY LIFE INSURANCE   )
COMPANY,                            )
                                   )
                Defendants.        )

## <u>COMPLAINT</u>

The Plaintiff, Linda Kimble, Administratrix of the Estate of Norman E. Kimble, by and

through her undersigned counsel, hereby files this Complaint, stating in support thereof as

follows:

### PARTIES

1.      Plaintiff, Linda Kimble, Administratrix of the Estate of Norman E. Kimble, is an

adult and resides at 196 Brown Road, Rebersburg, Pennsylvania 16872

2.      Defendants are Owner Operator Independent Drivers Association, an association

that provides insurance coverage to commercial truck drivers, with a business address of 1 NW

OOIDA Drive, Grain Valley, Missouri 64029; Atlantic Specialty Insurance Company, an

insurance company with a business address of 605 Highway 169 North, Suite 800, Plymouth,

Minnesota 55441; Inter-Americas Insurance Corp., Inc., an insurance company with a business

address of 1035 South 183rd Street, West Goddard, KS 67052, and Great Fidelity Life Insurance

Company, an insurance company with a business address of 1035 South 183rd Street, West

Goddard, KS 67052 (collectively, "Defendants").

## FACTS

3.    At all times pertinent hereto, Defendants conducted business within the Commonwealth of Pennsylvania, including Centre County.

4.    At all times pertinent hereto, Norman E. Kimble ("Mr. Kimble") held an Occupational Accident Insurance Policy ("Policy") issued by Defendants in connection with his occupation as a commercial truck driver. A true and correct copy of the Policy is attached hereto as Exhibit "A."

5.    On September 1, 2016, while acting in the course and scope of his employment as a commercial truck driver, Mr. Kimble was killed in a motor vehicle accident.

6.    On or about November 11, 2016, Plaintiff submitted an "accidental death" claim with Defendants, seeking benefits to which Plaintiff is entitled under the Policy. A true and correct copy of the submitted accidental death claim form is attached hereto as Exhibit "B."

7.    On or about December 15, 2016, Plaintiff submitted an "occupational accident" claim with Defendants, seeking benefits to which Plaintiff is entitled under the Policy. A true and correct copy of the submitted occupational accident claim form is attached hereto as Exhibit "C."

8.    Plaintiff has followed the proper procedures to submit an insurance claim(s) with Defendants, including, on multiple occasions, providing Defendants with copies of requested documents.

9.    Despite Plaintiff's efforts, Defendants continue to request information that Plaintiff has either already provided to Defendants or explained its absence, as well as additional information that has not previously been requested and is not relevant to the claim(s).

10.    Defendants have not only failed to compensate Plaintiff pursuant to the terms of

the Policy, but have failed to even make a determination of coverage.

## COUNT I
## BREACH OF CONTRACT

11.     Plaintiff hereby incorporates each of the preceding paragraphs of the Complaint as if each were set forth more fully herein.

12.     At all pertinent times hereto, Mr. Kimble held an insurance policy with Defendants.

13.     Following the death of Mr. Kimble, Plaintiff followed the proper procedures to submit an insurance claim(s) with Defendants.

14.     At all times pertinent hereto, Defendants had a duty to investigate and administer Plaintiff's claim(s), pursuant to the Policy and Pennsylvania law.

15.     Defendants are in breach of contract for not only failing to fairly compensate Plaintiff pursuant to the terms of the Policy, but for failing to even make a determination regarding coverage under the Policy.

16.     As a result of Defendants' breach, Plaintiff has been deprived of the benefits provided under the Policy.

WHEREFORE, Plaintiff, Linda Kimble, Administratrix of the Estate of Norman E. Kimble, demands judgment in her favor against Defendants, in an amount in excess of the applicable arbitration limits.

## COUNT II
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

17.     Plaintiff hereby incorporates each of the preceding paragraphs of the Complaint as if each were set forth more fully herein.

18.     As insurers doing business in the Commonwealth of Pennsylvania and fiduciaries,

Defendants owed Plaintiff, Linda Kimble, Administratrix of the Estate of Norman E. Kimble, a duty of good faith and fair dealing as part of their obligations under the Policy that it issued to Norman E. Kimble, for which premiums were paid.

19.     Defendants breached their duty of good faith and fair dealing owed to Plaintiff by not only failing to fairly compensate Plaintiff pursuant to terms of the Policy, but for failing to even make a determination regarding coverage under the Policy.

20.     Plaintiff has followed the proper procedures to submit an insurance claim(s) with Defendants, including making every effort to prove to Defendants that Plaintiff qualified for benefits under the Policy, yet Defendants continue to refuse to make a determination of coverage and/or compensate Plaintiff.

21.     Plaintiff has suffered damages as a result of Defendants dilatory and vexatious conduct and its refusal to compensate Plaintiff pursuant to the terms of the Policy, to which Plaintiff is contractually and statutorily entitled.

WHEREFORE, Plaintiff, Linda Kimble, Administratrix of the Estate of Norman E. Kimble, demands judgment in her favor against Defendants, in an amount in excess of the applicable arbitration limits and that the Plaintiff be awarded the following relief:

(a)     Compensatory damages;

(b)     Punitive damages in an amount to be determined by the jury;

(c)     Pre- and post-judgment interest;

(d)     Reasonable attorneys' fees and costs; and

(e)     Such other relief as this Court deems appropriate.

## COUNT III
## VIOLATION OF 42 PA. C.S. § 8371

22.     Plaintiff hereby incorporates each of the preceding paragraphs of the Complaint

as if each were set forth more fully herein.

23.     Defendants have breached their duty of good faith and fair dealing owed to Plaintiff, Linda Kimble, Administratrix of the Estate of Norman E. Kimble, as required by 42 Pa. C.S. § 8371, by not only failing to compensate Plaintiff pursuant to the terms of the Policy, but by failing to even make a determination of coverage.

24.     Defendants' conduct is outrageous, malicious, willful, wanton, and in reckless indifference to Plaintiff's interest and contrary to the public policy of this Commonwealth.

25.     Plaintiff has suffered damages as a result of Defendants dilatory and vexatious conduct, and its refusal to compensate Plaintiff pursuant to the terms of the Policy, to which Plaintiff is contractually and statutorily entitled.

WHEREFORE, Plaintiff, Linda Kimble, Administratrix of the Estate of Norman E. Kimble, demands judgment in her favor against Defendants, in an amount in excess of the arbitration limits of this Court and that Plaintiff be awarded the following relief:

(a)     Compensatory damages;

(b)     Punitive damages in an amount to be determined by the jury;

(c)     Pre- and post-judgment interest;

(d)     Reasonable attorneys' fees and costs; and

(e)     Such other relief as this Court deems appropriate.

Respectfully submitted,

David B. Consiglio, Esquire
Pa. I.D. No. 72772
John W. Lhota, Esquire
Pa. I.D. No. 319466

5

**Campbell, Miller, Williams,
Benson & Consiglio, Inc.**
720 S. Atherton Street, Suite 201
State College, PA 16801
814-234-1500 TEL
814-234-1549 FAX
dconsiglio@mkclaw.com
jlhota@mkclaw.com

Date:   January 4, 2018

## VERIFICATION

I, Linda Kimble, verify that the statements contained in the foregoing document are true and correct to the best of my knowledge, information and belief. I understand that false statements therein are made subject to the penalties of 18 Pa. C.S.A. Section 4904, relating to unsworn falsification to authorities.

_Linda Kay Kimble_
Linda Kimble, Administratrix of the Estate
of Norman E. Kimble

Date: 12/28/17

# Exhibit "A"



# OCCUPATIONAL ACCIDENT
# CERTIFICATE OF INSURANCE

## FOR

## PARTICIPATING MEMBERS IN THE
## OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC. INSURANCE TRUST
## POLICY #216-000-559

### IMPORTANT NOTICE

THIS INSURANCE IS NOT WORKERS' COMPENSATION INSURANCE.

IT IS NOT A SUBSTITUTE FOR WORKERS' COMPENSATION INSURANCE.

THIS INSURANCE PROVIDES COVERAGE FOR LOSSES DUE TO ACCIDENTS ONLY.

IT DOES NOT PROVIDE COVERAGE FOR SICKNESS OR
LOSSES DUE TO SICKNESS.

OneBeacon America Insurance Company
1 Beacon Lane
Canton, MA 02021-1030

POLICYHOLDER:                    Owner-Operator Independent Drivers Association, Inc.
                                 Insurance Trust
                                 Trustee: Bank of America, N.A.

POLICY NUMBER:                   216-000-559

The insurance evidenced by this Certificate provides Accident insurance only. It does not provide Coverage for sickness. This Certificate describes the main features of the Policy, but the Policy is the only contract under which benefit payments are made. If there is an inconsistency between the Certificate and the Policy, the Policy will govern.

The Policy upon which this Certificate is based, is governed by the laws of the District of Columbia.

## OCCUPATIONAL ACCIDENT

## CERTIFICATE OF INSURANCE

### Table of Contents

Provision                                              Section

ELIGIBILITY, EFFECTIVE DATE AND TERMINATION DATE..........I
    Eligibility
    Owner-Operator's Effective Date
    Contract Driver's and Employee Driver's Effective Date
    Temporary Replacement Driver's Effective Date
    Owner-Operator's Termination Date
    Contract Driver's and Employee Driver's Termination Date
    Temporary Replacement Driver's Termination Date

SCHEDULE OF BENEFITS..........................................................II

PREMIUM...........................................................................III
    Premium Amount
    Premium Due Date
    Grace Period
    Insured Person's Reinstatement Period
    Waiver of Premium
    Change of Premium Amount

BENEFITS............................................................................IV

LIMITATIONS.......................................................................V

GENERAL EXCLUSIONS......................................................VI

CLAIMS PROVISIONS..........................................................VII

GENERAL PROVISIONS.......................................................VIII

GENERAL DEFINITIONS......................................................IX


DESCRIPTION OF AVAILABLE SERVICES...............ATTACHMENT A

EXHIBITS

   • CO-DRIVER AGREEMENT              EXHIBIT 1

   • MEDICAL BILLING GROUP
     PROCEDURES                        EXHIBIT 2

CERTIFICATE ENDORSEMENT               No.1
CERTIFICATE OF ASSUMPTION             AH 990 ASSU CW 04 12

# SECTION I – ELIGIBILITY, EFFECTIVE DATE AND TERMINATION DATE

## ELIGIBILITY

Eligible Persons are current dues paying members of the **Owner-Operator Independent Drivers Association, Inc. (OOIDA)** headquartered at:

> 1 NW OOIDA Drive
> Grain Valley, Missouri 64029

who are eighteen (18) years of age or older, and who are under **Dispatch** (i.e. **Actively at Work**).

### Class I:

Eligible **Owner-Operators** who enroll for coverage under the **Policy** and agree to participate in the **Trust**. For purposes of the **Policy**, an **Owner-Operator** must:

1. have a valid and current Commercial Driver's License or the required license for the type of vehicle the driver is contracted to operate*;
2. own or lease a power unit;
3. be responsible for the maintenance of the power unit;
4. be responsible for the operating costs of the power unit, including but not limited to fuel, repairs, supplies and other expenses associated with the operation of the power unit;
5. be responsible for maintaining physical damage insurance on the power unit;
6. be responsible for hiring and supervising personnel who operate the power unit;
7. be compensated on a basis other than time expended in the performance of work;
8. be responsible for determining the route and hours for an assignment;
9. have the right to select the load;
10. have a written contract or assignment from the person who has engaged his or her services which provides that he or she is an independent contractor;
11. be classified as an independent contractor by the person who has engaged his or her services and not as an employee for purposes of Workers' Compensation Insurance, federal income taxes, state income taxes, Social Security, Unemployment Insurance or for any other purpose; and
12. receive a 1099 form for federal income tax reporting purposes, unless the **Owner-Operator** has an ownership interest in a business entity and receives for federal income tax purposes a tax reporting form from such business entity as an employee, shareholder, member or partner of such business entity.

### Class II:

Eligible **Contract Drivers** who enroll for coverage under the **Policy** and agree to participate in the **Trust**. For purposes of the **Policy**, a **Contract Driver** must:

1. have a valid and current Commercial Driver's License or the required license for the type of vehicle the driver is contracted to operate*;
2. be authorized by an **Owner-Operator** or motor carrier to operate a power unit;
3. neither own nor lease the power unit; and
4. receive a 1099 form for federal income tax reporting purposes, not a W-2.

### Class III:

Eligible **Employee Drivers** who enroll for coverage under the **Policy** and agree to participate in the **Trust**. For purposes of the **Policy**, an **Employee Driver** must:

1. have a valid and current Commercial Driver's License or the required license for the type of vehicle the driver is contracted to operate;
2. be authorized by an **Owner-Operator** or motor carrier to operate a power unit;
3. neither own nor lease the power unit;
4. receive a W-2 for federal income tax purposes;

5.  be exempt from Workers' Compensation coverage. **The Employee Driver must have a completed and signed Certificate of Workers' Compensation Exemption on file with OOIDA; and**

6.  pay the premium for his or her **Occupational Accident** coverage.

**Class IV:**

Eligible **Temporary Replacement Drivers** who enroll or who are enrolled for coverage under the **Policy** and the **Trust** by a Class I or Class II **OOIDA** member. For purposes of the **Policy**, a **Temporary Replacement Driver** must:

1.  have a valid and current Commercial Driver's License or the required license for the type of vehicle the driver is contracted to operate;

2.  be authorized to operate the power unit;

3.  neither own nor lease the power unit;

4.  receive either a 1099 form or W-2 for federal income tax purposes;

5.  be exempted from Workers' Compensation coverage if the **Temporary Replacement Driver** is an employee; and

6.  be on file with **OOIDA** as a **Temporary Replacement Driver** with the start and end date of the assignment period.

An **OOIDA** member is not eligible to become an **Insured Person** if he or she is covered under another Occupational Accident Policy issued by this **Company**. If an **OOIDA** member pays premium but is not eligible for coverage or does not qualify for benefits under the **Policy**, the **Company** will refund premium paid in error.

For Classes I and II only, after coverage is in effect, the **Actively at Work** requirement will be waived for a period of fourteen (14) days while a **Temporary Replacement Driver** operates the power unit.

\* This requirement is waived for FedEx Corporation van drivers who are eligible **Owner-Operators** or eligible **Contract Drivers.**

## EFFECTIVE DATE

**Class I-Owner-Operator:** If **You** are an **Owner-Operator**, **Your** coverage under the **Policy** begins on the latest of:

1.  the **Policy** Effective Date;

2.  the date **You** become a member of an eligible class as described above; or

3.  the effective date indicated on the proof of insurance form issued to **You** by **Owner-Operator Services, Inc.** The premium for the first month must be paid at the time of enrollment, unless otherwise agreed to in writing.

**Class II-Contract Driver and Class III-Employee Driver:** If **You** are a **Contract Driver** or an **Employee Driver**, **Your** coverage under the **Policy** begins on the latest of:

1.  the **Policy** Effective Date;

2.  the date **You** become a member of an eligible class as described above; or

3.  the effective date indicated on the proof of insurance form issued to **You** by **Owner-Operator Services, Inc.** The premium for the first month must be paid at the time of enrollment, unless otherwise agreed to in writing.

**Class IV-Temporary Replacement Driver:** If **You** are a **Temporary Replacement Driver**, **Your** coverage under the **Policy** begins on the latest of:

1.  the **Policy** Effective Date;

2.  the date **You** become a member of an eligible class as described above; or

3.  the effective date indicated on the proof of insurance form issued by **Owner-Operator Services, Inc.** The premium must be paid at the time of enrollment, unless otherwise agreed to in writing.

## TERMINATION DATE

**Class I-Owner-Operator:** If **You** are an **Owner-Operator**, **Your** coverage under the **Policy** ends on the first day of the month following the earliest of:

1.  the date the **Policy** is terminated;

2.  the premium due date, if premiums are not paid when due, subject to the Grace Period and **Your** Reinstatement

provision;

3.  the date on which coverage is cancelled in accordance with **OOIDA's** Billing Procedures which are attached to and made part of this **Certificate** as Exhibit 2, and subject to **Your** Reinstatement provision;

4.  if **You** request, in writing (including by way of fax or electronic mail), that **Your** coverage be cancelled, the date on which coverage is cancelled in accordance with **OOIDA's** Cancellation Procedures which are attached to and made part of this **Certificate** as Exhibit 2; or

5.  the date **You** cease to be a member of an eligible Class as described above.

**Class II-Contract Driver and Class III-Employee Driver:** If **You** are a **Contract Driver** or an **Employee Driver**, **Your** coverage under the **Policy** ends on the first day of the month following the earliest of:

1.  the date the **Policy** is terminated;

2.  the premium due date, if premiums are not paid when due, subject to the Grace Period and **Your** Reinstatement provision;

3.  the date on which coverage is cancelled in accordance with **OOIDA's** Billing Procedures which are attached to and made part of this **Certificate** as Exhibit 2, subject to **Your** Reinstatement provision;

4.  if **You** request, in writing (including by way of fax or electronic mail), that **Your** coverage be cancelled, the date on which coverage is cancelled in accordance with **OOIDA's** Cancellation Procedures which are attached to and made part of this **Certificate** as Exhibit 2; or

5.  the date **You** cease to be a member of an eligible Class as described above.

**Class IV-Temporary Replacement Driver:** If **You** are a **Temporary Replacement Driver**, **Your** coverage under the **Policy** ends on the earliest of:

1.  the date the **Policy** is terminated;

2.  the premium due date, if the premium is not paid when due. There is no Grace Period;

3.  the date **Your** assignment ends;

4.  the date **You** cease to be a member of an eligible Class as described above; or

5.  the cancellation date indicated on the cancellation of coverage per request form issued by **Owner-Operator Services, Inc.** at the time of enrollment.

A change in **Your** coverage under the **Policy**, due to a change in **Your** eligible Class or benefit selection, becomes effective on the later of: (1) the date the change in **Your** eligible Class or benefit selection occurs; or (2) if the change requires a change in premium, the date the first changed premium is paid. However, a change in coverage applies only with respect to **Covered Accidents** that occur after the change becomes effective.

Termination of coverage will not affect a claim for a **Covered Loss** that occurs either before or after such termination, if that **Covered Loss** results from an **Accident** that occurred while **Your** coverage was in force under the **Policy**.

## SECTION II – SCHEDULE OF BENEFITS

<u>OCCUPATIONAL ACCIDENT BENEFITS</u>

Accidental Death Benefit:
    Principal Sum * ................................................................................. $50,000
    Accident Commencement Period ........................................................... 365 days

Survivor's Benefit:
    Principal Sum * ............................................................................... $150,000
    Monthly Benefit Amount ..................................................................... $1,500
    Accident Commencement Period ........................................................... 365 days

Accidental Dismemberment Benefit:
    Principal Sum * ............................................................................... $200,000
    Monthly Benefit Amount ..................................................................... $2,000
    Accident Commencement Period ........................................................... 365 days

Paralysis Benefit:
    Principal Sum * ............................................................................... $200,000
    Monthly Benefit Amount ..................................................................... $2,000
    Accident Commencement Period ........................................................... 365 days

Temporary Total Disability Benefit:
    Disability Commencement Period .......................................................... 90 days
    Waiting Period ..................................................................................... 7 days
    Benefit Percentage ................................................................................... 70%
    Minimum Weekly Benefit Amount .......................................................... $125
    Maximum Weekly Benefit Amount ......................................................... $500
    Maximum Benefit Period ** ............................................................ 104 weeks
    Maximum Benefit Period for Hernia ..................................................... 10 weeks
    Maximum Benefit Period for Cumulative Trauma ................................... 10 weeks

Continuous Total Disability Benefit: ***
    Waiting Period ............................................................................... 104 weeks
    Benefit Percentage ................................................................................... 70%
    Minimum Weekly Benefit Amount ............................................................ $50
    Maximum Weekly Benefit Amount ......................................................... $500
    Maximum Benefit Amount .............................................................. $200,000
    Maximum Benefit Period .............................................................. to age 70

Accident Medical Expense Benefit:
    Medical Commencement Period ........................................................... 90 days
    Deductible Amount ..................................................................................... $0
    Maximum Benefit Period .............................................................. 104 weeks
    Dental Maximum .............................................................. $3,600 per Accident
    Maximum Benefit Amount per Accident ............................................. $500,000
    Lifetime Maximum Benefit .............................................................. $500,000
    Limits on Accident Medical Expense Benefits:
    • Services provided by a Chiropractor or Acupuncturist, not including Physical Therapy,
        Occupational Therapy, Work Hardening Therapy.............................$1,000 per Injury
    • Ambulance .............................................one round trip to and from a Hospital
        but not more than $1,000 for any one Accident (subject to the Travel Assistance benefit)

- Air Ambulance..................................................one round trip to and from a Hospital
  but not more than $7,000 for any one **Accident** (subject to the Travel Assistance benefit)
- Hernia Coverage..................................................lifetime **Maximum Benefit** of $10,000
- **Mental and Nervous** – Outpatient...$25 per visit to a maximum 20 visits for any one **Accident**
- **Mental and Nervous** – Inpatient...........................maximum $1,000 for any one **Accident**
- **Occupational Cumulative Trauma and/or**
  **Repetitive Conditions** ...............................................lifetime **Maximum Benefit** of $10,000

## OCCUPATIONAL ACCIDENT LIMITS OF LIABILITY

- **Combined Single Limit** ....................................................................................... $500,000
- **Aggregate Limit of Liability** ................................................................... $1,000,000
  (Applicable to all **Covered Losses** with respect to any one **Occupational Accident**)
- **Pre-Existing Condition** Limitation ............................................................$10,000
  (Applicable only if **Injury** incurred during first twelve (12) consecutive months of **Insured Person's** coverage under the **Policy**. If **Injury** incurred after twelve (12) consecutive months of coverage, this limitation will not apply.)

\* The payment of this Monthly Benefit will cease upon the earliest of the following: (1) the date the total of the applicable **Principal Sum** has been paid; or (2) the date the **Insured Person** dies. The most We will pay for these benefits, as well as the Accidental Death Benefit, in total, is the **Insured Person's Principal Sum**, if the **Insured Person** can recover benefits under more than one of the benefits as a result of the same Accident.

At age 65, **Your Principal Sum** shall be based on the following schedule:

| Age at Date of Loss | % of **Principal Sum** |
|---|---|
| 65 | 80% |
| 66 | 60% |
| 67 | 40% |
| 68 | 20% |
| 69 | 15% |
| 70 and over | 10% |

\*\* If **You** sustain a **Covered Injury** at or after age 70, the **Maximum Benefit Period** shall be one (1) year.

\*\*\*If **You** sustain a **Covered Injury** after **Your** normal Social Security retirement age, as determined by federal law, **You** cannot qualify for **Continuous Total Disability**.

## NON-OCCUPATIONAL ACCIDENT BENEFITS

Accidental Death Benefit:
* **Principal Sum** .........................................................................................$15,000
  **Accident Commencement Period**...................................................... 365 days

Accidental Dismemberment Benefit:
* **Principal Sum**............................................................................................$15,000
  **Accident Commencement Period**......................................................365 days

Accident Medical Expense Benefit:
  **Medical Commencement Period** .......................................................... 90 days
  **Deductible Amount** ............................................................................... $0
  **Maximum Benefit Period**......................................................................104 weeks
  Dental Maximum ........................................................................ $1,000 per **Accident**
  **Maximum Benefit Amount per Accident** (including Dental Maximum)...............$10,000
  **Lifetime Maximum Benefit** .................................................................$10,000

Limits on **Accident Medical Expense** Benefits:
- Services provided by a Chiropractor or Acupuncturist, not including Physical Therapy,
  Occupational Therapy, Work Hardening Therapy.................................$1,000 per **Injury**
- Ambulance...............................................................one round trip to and from a Hospital
  but not more than $1,000 for any one **Accident** (subject to the Travel Assistance benefit)
- Air Ambulance..........................................................one round trip to and from a Hospital
  but not more than $7,000 for any one **Accident** (subject to the Travel Assistance benefit)
- Hernia Coverage ..................................................................lifetime **Maximum Benefit** of $10,000
- **Mental and Nervous – Outpatient**..... $25 per visit to a maximum 20 visits for any one **Accident**
- **Mental and Nervous – Inpatient**...........................maximum $1,000 for any one **Accident**
- **Non-Occupational Cumulative Trauma** and/or
  **Repetitive Conditions**.....................................lifetime **Maximum Benefit** of $10,000

## NON-OCCUPATIONAL ACCIDENT LIMITS OF LIABILITY

- **Combined Single Limit** ..........................................................................$20,000

- **Aggregate Limit of Liability**...................................................................$40,000
  (Applicable to all **Covered Losses** with respect to any one **Non-Occupational Accident**)

- **Pre-Existing Condition Limitation**...........................................................$10,000
  (Applicable only if **Injury** incurred during first twelve (12) consecutive months of **Insured
  Person's** coverage under the **Policy**. If **Injury** incurred after twelve (12) consecutive months of
  coverage, this limitation will not apply.)

*At age 65, **Your Principal Sum** shall be based on the following schedule:

| Age at Date of Loss | % of **Principal Sum** |
|---|---|
| 65 | 80% |
| 66 | 60% |
| 67 | 40% |
| 68 | 20% |
| 69 | 15% |
| 70 and over | 10% |

## ADDITIONAL BENEFITS

Travel Assistance...................................................as stated in SECTION IV-BENEFITS

# SECTION III – PREMIUM

**Premium Amount:**

| | |
|---|---|
| **Primary Driver:** | $130.50 per month |
| **Co-Driver:** | $110.50 per month |
| **Temporary Driver:** | $ 78.30 per 14-day period |

**Premium Due Date:**

The premium for the first month of coverage is due at the time of enrollment.

Premiums for future months of coverage are due as follows:

- If the premium is billed and collected by **OOIDA**, the premium after the first premium shall be payable in accordance with **OOIDA's** Billing Procedures which are attached to and made part of this **Certificate** as Exhibit 2.
- If the premium is collected by a motor carrier or other third party, the premium is due in accordance with the premium due date on the list bill issued by **OOIDA** to the motor carrier or other third party.

**Grace Period:**

With respect to Class I, Class II, and Class III **Insured Persons:**

- If the premium is billed and collected by **OOIDA, Your** Grace Period will be applied in accordance with **OOIDA's** Billing Procedures which are attached to and made part of this **Certificate** as Exhibit 2.
- If the premium is collected by a motor carrier or other third party and remitted to **OOIDA**, a Grace Period of thirty-one (31) days will be provided for the payment of any premium due after the first premium.

**Your** coverage will not be terminated for non-payment of premium during the Grace Period, if You pay the premiums due by the last day of the Grace Period.

No Grace Period will be provided if the **Company** receives notice to terminate **Your** coverage prior to a premium due date. No Grace Period will be provided if **You** are a **Temporary Replacement Driver.**

**Your Reinstatement Period**:  With respect to Class I, Class II and Class III **Insured Persons, Your** Reinstatement Period will be in accordance with **OOIDA's** Billing Procedures which are attached to and made part of this **Certificate** as Exhibit 2.

**Waiver of Premium**: Subject to the **Policy** remaining in force, all premiums due under the **Policy** with respect to **Your** receiving either a **Temporary Total Disability** Benefit or **Continuous Total Disability** Benefit under the **Policy** will be waived.  Premiums will be waived from the first premium due date on or after the date the **Temporary Total Disability** Benefit or the **Continuous Total Disability** Benefit begins.  Premium payments must be resumed on the premium due date next following the date **Your Temporary Total Disability** Benefit or **Continuous Total Disability** Benefit ceases. If premium payments are not resumed on that date, **Your** coverage under the **Policy** shall end on that date.

**Change of Premium Amount**: Premiums are payable to the **Company** at the rates and in the manner described above. The **Company** may change the required premiums due by giving the **Policyholder** or its designee at least sixty (60) days advance written notice.  The **Company** may change the required premiums as a condition of any renewal of the **Policy**. The **Company** may also change the required premiums at any time when any change affecting premiums is made in the **Policy**.

# SECTION IV – BENEFITS

## PRINCIPAL SUM

As applicable to each **Insured Person**, **Principal Sum** means the amount of insurance in force under the **Policy** on the date of the **Accident**, as described in the **Schedule**.

## ACCIDENTAL DEATH BENEFIT

If **You** sustain a **Covered Injury** that results in death within the **Accident Commencement Period** shown in the **Schedule**, the **Company** will pay the **Principal Sum** shown in the **Schedule**. The **Accident Commencement Period** starts on the date of the **Accident** that caused such **Injury**. If **You** suffer an **Accidental** Death such that an **Accidental** Death Benefit is payable under the **Policy**, the **Company** will pay the beneficiary in accordance with the Payment of Claims provision.

### Survivor's Benefit

The Monthly Benefit Amount shall be as described in the **Schedule**. The Monthly Benefit Amount shall be paid to **Your** surviving **Spouse** up to the **Principal Sum** shown in the **Schedule**.

If **You** are not survived by a **Spouse**, or if **Your Spouse** dies or remarries, the **Company** will pay or continue to pay the Survivor's Benefit to **Your** surviving **Dependent Child(ren)**, if any. If there is more than one surviving **Dependent Child**, the Survivor's Benefit will be distributed equally among the surviving **Dependent Children**. The payment of the monthly Survivor's Benefit will end on the earliest of the following dates:

1. the date **Your Spouse** dies or remarries, if there are no **Dependent Child(ren)**;
2. the date **Your** last **Dependent Child** dies or is no longer eligible as defined in the GENERAL DEFINITIONS Section of this **Certificate**; or
3. the date the **Principal Sum** has been paid.

If **You** are not survived by a **Spouse** or any **Dependent Child(ren)**, the **Company** will pay the Monthly Benefit Amount as described in the **Schedule** to a maximum of $50,000 to **Your** named beneficiary or other survivors in accordance with the Payment of Claims provision of the **Policy**. The payment of the monthly Survivor's Benefit to such recipient will end on the date the maximum of $50,000 has been paid.

### Exposure and Disappearance

If **You** are exposed to weather because of an **Accident** and this results in a **Covered Loss**, the **Company** will pay the applicable **Principal Sum**, subject to all **Policy** terms.

If **Your** body has not been found within 365 days after the disappearance, stranding, sinking or wrecking of a power unit in which **You** were an occupant, then it will be presumed, subject to all other terms and provisions of the **Policy**, that **You** have suffered **Accidental** Death within the meaning of the **Policy**. If **You** are subsequently found alive and identified, the **Company** has the right to recover any benefits paid.

## ACCIDENTAL DISMEMBERMENT BENEFIT

If **Injury** to **You** results in any one of the **Covered Losses** specified below, within the **Accident Commencement Period** shown in the **Schedule**, the **Company** will pay the Monthly Benefit Amount shown in the **Schedule**, if applicable, up to the applicable Percentage of the **Principal Sum** indicated below.

| For Covered Loss of: | Percentage of the Principal Sum |
|---|---|
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |

One Hand or One Foot ................................................................50%

Sight of One Eye .......................................................................50%

Thumb and Index Finger of Same Hand ....................................25%

For purposes of the Accidental Dismemberment Benefit, **Loss** shall mean:

**Loss** of a hand or foot means complete severance through or above the wrist or ankle joint. **Loss** of sight of an eye means total and irrecoverable loss of the entire sight in that eye. **Loss** of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

If **You** sustain more than one **Loss** as a result of the same **Covered Accident**, only one amount, the largest, will be paid.

## PARALYSIS BENEFIT (does not apply to a **Non-Occupational Accident**)

If **You** sustain a **Covered Injury** that results in any Type of Paralysis specified below, within the **Accident Commencement Period** shown in the **Schedule**, the **Company** will pay the Monthly Benefit Amount shown in the **Schedule** up to the applicable Percentage of the **Principal Sum** indicated below.

| Type of Paralysis: | Percentage of the Principal Sum |
|---|---|
| Quadriplegia | 100% |
| Paraplegia | 75% |
| Hemiplegia | 50% |
| Uniplegia | 25% |

**Quadriplegia** means the complete and irreversible paralysis of both upper and both lower **Limbs**. **Paraplegia** means the complete and irreversible paralysis of both lower **Limbs**. **Hemiplegia** means the complete and irreversible paralysis of the upper and lower **Limbs** of the same side of the body. **Uniplegia** means the complete and irreversible paralysis of one **Limb**. For purposes of this benefit, **Limb** means entire arm or entire leg.

If **You** sustain more than one Type of Paralysis as a result of the same **Covered Accident**, only the largest single amount will be considered a **Covered Loss**.

## TEMPORARY TOTAL DISABILITY (TTD) BENEFIT (does not apply to a **Non-Occupational Accident**)

**TTD Benefit Qualifications**

If **You** sustain a **Covered Injury** that results in **Temporary Total Disability** within the **Disability Commencement Period** shown in the **Schedule**, the **Company** will pay the **Temporary Total Disability** Benefit specified below, subject to satisfaction of any applicable **Waiting Period** shown in the **Schedule**. The **Disability Commencement Period** starts on the date of the **Accident** that caused such **Injury**. After the **Waiting Period** has been satisfied, the **Temporary Total Disability** Benefit will be payable from the day the **Waiting Period** was satisfied.

**TTD Benefit Amount**

The **Temporary Total Disability** Benefit with respect to each week of **Your Temporary Total Disability** during a **Single Period of Total Disability** is equal to the lesser of:

1.  the Benefit Percentage (70% as shown in the **Schedule**) of **Your Average Weekly Earnings**; or
2.  the **Maximum Weekly Benefit Amount** shown in the **Schedule**.

In no event will the **Weekly Benefit Amount** be less than the **Minimum Weekly Benefit Amount** as shown in the **Schedule**.

The **Temporary Total Disability** Benefit with respect to less than a full **Benefit Week** of **Temporary Total Disability** equals 1/7th of the **Weekly Benefit Amount** for each day of **Temporary Total Disability**.

**TTD Benefit Calculation**

For the purposes of this **Temporary Total Disability** Benefit, **Average Weekly Earnings** will be calculated as follows:

*   If **You** are a Class I-Owner-Operator:
    Thirty-three percent (33%) of the gross income **You** received in the prior year as shown in **Your** federal income tax return with schedules or 1099s, divided by 52, regardless of **Your** prior occupation. If **You** worked less than fifty

(50) weeks during the prior year, then thirty-three percent (33%) of the gross income received in the prior year as shown in **Your** federal income tax return with schedules or 1099s, divided by the number of weeks worked, regardless of **Your** prior occupation. **You** will have to produce proof of the number of weeks worked, if **You** are claiming less than fifty (50) weeks. If **You** are a **Co-Driver** and **Your** federal income tax return with schedules does not report gross income for **You**, **Your** gross income shall be deemed to be fifty percent (50%) of the gross income reported by the **Primary Driver** unless **You** can produce records satisfactory to the **Company** proving **Your** actual gross income.

- If **You** are a Class II-**Contract Driver**, a Class III-**Employee Driver** or a Class IV-**Temporary Replacement Driver**:

  Seventy-five percent (75%) of the gross income **You** received in the prior year as shown in **Your** federal income tax return with schedules or 1099s or similar wage reporting documents divided by 52 regardless of **Your** prior occupation. If **You** worked less than fifty (50) weeks during the prior year, then seventy-five percent (75%) of the gross income received in the prior year as shown in **Your** federal income tax return with schedules or 1099s or similar wage reporting documents divided by the number of weeks worked, regardless of **Your** prior occupation. **You** will have to produce proof of the number of weeks worked if **You** are claiming less than fifty (50) weeks.

If **You** did not file a federal income tax return or receive 1099s or similar wage reporting documents for the prior year but have worked as an **Owner-Operator** or **Contract Driver** for at least twenty-six (26) weeks in the current year, the **Company** will divide the gross income earned in the current year by the number of weeks worked in the current year. **You** will have to produce proof of **Your** gross income and the number of weeks worked.

If **You** did not file a federal income tax return or receive 1099s or similar wage reporting documents for the prior year and have not worked as an **Owner-Operator** or **Contract Driver** for at least twenty-six (26) weeks in the current year, the **Company** will award **You** the **Minimum Weekly Benefit Amount** as shown in the **Schedule**.

**TTD Benefit Offsets**

Subject to the **Minimum Weekly Benefit Amount**, the **Total Disability Benefit** shall be reduced by: (1) Social Security Disability Benefits, excluding any amounts for which **Your Dependents** may qualify because of **Your Disability**; (2) Social Security Retirement Benefits; (3) Individual or Group Disability Benefits, except for disability benefits under the **OOIDA** sponsored Voluntary Disability Plans which will not reduce the benefit; (4) the amount of any disability income benefits from any automobile or no-fault policy or insurance; (5) the amount **You** receive as compensation for lost wages or lost income in a lawsuit or the settlement of a lawsuit; and (6) any income from employment or services, or from leasing **Your** power unit. **You** must provide tax schedules and returns to the **Company** for the purpose of calculating this offset.

**TTD Benefit Termination**

The **Temporary Total Disability** Benefit will cease on the earliest of the following dates:

1. the date **You** are no longer **Temporarily Totally Disabled**;
2. the date the **Maximum Benefit Period** shown in the **Schedule** has been reached;
3. the date on which the **Temporary Total Disability** is not substantiated by objective medical evidence satisfactory to the **Company**; or
4. the date **You** die.

**TTD Benefit Definitions**

As used in this **Temporary Total Disability** Benefit:

**Benefit Week** means a 7-day period of time that begins on the first day of **Temporary Total Disability** after the **Waiting Period** shown in the **Schedule** for **Temporary Total Disability**, and on the same day of each week thereafter.

**Continuous Care** means monthly monitoring and/or evaluation of the disabling condition by a **Physician**. The **Company** must receive proof of continuing **Temporary Total Disability** on a monthly basis.

**Disability Commencement Period** means the time period, shown in the **Schedule**, between the date of the **Accident** that caused the **Injury** and the date that **Temporary Total Disability** must begin for disability benefits to be payable under the **Policy**. The **Company** may extend the **Disability Commencement Period** for a specified period of time not to exceed sixty (60) days, if the **Company** approves a treatment plan prescribed by a **Physician** relating to **Your** medical condition. If **You** do not adhere to the treatment plan approved by the **Company**, **You** shall not qualify for the extension. The **Company** must approve the treatment plan prior to the expiration of the **Disability Commencement Period** as stated in the **Schedule**.

**Maximum Benefit Period** means, with respect to **Temporary Total Disability**, the maximum period for which benefits will be payable for a **Temporary Total Disability Covered Loss** during a **Single Period of Total Disability**. The **Maximum Benefit Period** begins after the **Waiting Period**, as indicated in the **Schedule**, has been satisfied. The length of the **Maximum Benefit Period** for **Temporary Total Disability** is shown in the **Schedule**.

**Single Period of Total Disability** means all periods of **Temporary Total Disability** due to the same or related causes (whether or not insurance has been interrupted) except any of the following which are considered separate periods of disability: (1) successive periods of **Temporary Total Disability** due to entirely different and unrelated causes, separated by at least one full day during which **You** are not **Temporarily Totally Disabled**; (2) successive periods of **Temporary Total Disability** due to the same or related causes, separated by at least 6 months during which **You** are not **Temporarily Totally Disabled**.

**Temporary Total Disability** or **Temporarily Totally Disabled** means disability that: (1) prevents **You** from performing the **Material and Substantial Duties** of **Your** occupation as a commercial truck driver; (2) requires the care and treatment of a **Physician**; and (3) requires that, and results in, **You** receiving **Continuous Care**. If **You** do not adhere to the treatment plan the **Physician** prescribes relating to **Your** disabling condition, **You** shall not qualify for the **Temporary Total Disability Benefit**. **You** cannot engage in any activity which results in earned income.

For purposes of this section, "**Material and Substantial Duties**" shall mean the duties which **You** are required to perform as an **Owner-Operator**, **Contract Driver**, **Employee Driver**, or **Temporary Replacement Driver**, as applicable.

**Weekly Benefit Amount** means the lesser of the benefit percentage as shown in the **Schedule** (70%) of the **Average Weekly Earnings** or the **Maximum Weekly Benefit Amount** as shown in the **Schedule**.

## CONTINUOUS TOTAL DISABILITY (CTD) BENEFIT (does not apply to a **Non-Occupational Accident**)

### CTD Benefit Qualifications

If **You** sustain a **Covered Injury** resulting in **Temporary Total Disability**, that subsequently results in **Continuous Total Disability**, the **Company** will pay the **Continuous Total Disability** Benefit specified below, provided:

1. the benefits payable for the **Temporary Total Disability Covered Loss** ceased solely because the **Maximum Benefit Period** shown in the **Schedule** for **Temporary Total Disability** has been reached, but **You** remain disabled;
2. **You** are under the normal Social Security retirement age, as determined by federal law, on the day after the **Maximum Benefit Period** shown in the Schedule for **Temporary Total Disability** has been reached;
3. **You** have been granted a Social Security Disability Award for **Your** disability. (If **You** cannot meet the credit requirement for a Social Security Award, **You** cannot qualify for the **Continuous Total Disability** Benefit even if **You** would otherwise qualify);
4. **Your** disability is reasonably expected to continue without interruption until **You** die, and is substantiated by objective medical evidence satisfactory to the **Company**;
5. the **Injury** began within the **Disability Commencement Period** shown in the Schedule; and
6. the **Temporary Total Disability** was not principally due to a **Mental and Nervous or Depressive Condition**. (If the **Temporary Total Disability** was principally due to a **Mental and Nervous or Depressive Condition**, **You** do not qualify for a **Continuous Total Disability** Benefit.)

**You** cannot qualify for a **Continuous Total Disability** Benefit unless **You** qualified for a **Temporary Total Disability** Benefit for the same **Covered Injury**.

**Sunset Period:** If **You** are not granted a Social Security Award for **Your** disability within two (2) years of the **Injury**, **You** cannot qualify for a **Continuous Total Disability** Benefit even if **You** would otherwise qualify.

### CTD Benefit Amount

The **Weekly Benefit Amount** shall be the lesser of the benefit percentage as shown in the **Schedule** (70%) of the **Average Weekly Earnings** or the **Maximum Weekly Benefit Amount** as shown in the **Schedule**. In no event will the **Weekly Benefit Amount** be less than the **Minimum Weekly Benefit Amount** as shown in the **Schedule**.

The **Continuous Total Disability** Benefit with respect to less than a full **Benefit Week** of **Continuous Total Disability** equals 1/7th of the **Weekly Benefit** for each day of **Continuous Total Disability**.

**CTD Benefit Calculation**

For purposes of this **Continuous Total Disability** Benefit, **Average Weekly Earnings** will be calculated as follows:

- If **You** are a **Class I-Owner-Operator**:

  Thirty-three percent (33%) of the gross income **You** received in the prior year as shown in **Your** federal income tax return with schedules or 1099s, divided by 52, regardless of **Your** prior occupation. If **You** worked less than fifty (50) weeks during the prior year, then thirty-three percent (33%) of the gross income received in the prior year as shown in **Your** federal income tax return with schedules or 1099s, divided by the number of weeks worked, regardless of **Your** prior occupation. **You** will have to produce proof of the number of weeks worked if **You** are claiming less than fifty (50) weeks. If **You** are a **Co-Driver** and **Your** federal income tax return with schedules does not report gross income for **You**, **Your** gross income shall be deemed to be fifty percent (50%) of the gross income reported by the **Primary Driver** unless **You** can produce records satisfactory to the **Company** proving **Your** actual gross income.

- If **You** are a **Class II-Contract Driver**, a **Class III-Employee Driver**, or a **Class IV-Temporary Replacement Driver**:

  Seventy-five percent (75%) of the gross income **You** received in the prior year as shown in **Your** federal income tax return with schedules or 1099s or similar wage reporting documents divided by 52 regardless of **Your** prior occupation. If **You** worked less than fifty (50) weeks during the prior year, then seventy-five percent (75%) of the gross income received in the prior year as shown in **Your** federal income tax return with schedules or 1099s or similar wage reporting documents divided by the number of weeks worked, regardless of **Your** prior occupation. **You** will have to produce proof of the number of weeks worked, if **You** are claiming less than fifty (50) weeks.

If **You** did not file a federal income tax return or receive 1099s or similar wage reporting documents for the prior year but have worked as an **Owner-Operator** or **Contract Driver** for at least twenty-six (26) weeks in the current year, the **Company** will divide the gross income earned in the current year by the number of weeks worked in the current year. **You** will have to produce proof of **Your** income and the number of weeks worked.

If **You** did not file a federal income tax return or receive 1099s or similar wage reporting documents for the prior year and have not worked as an **Owner-Operator** or **Contract Driver** for at least twenty-six (26) weeks in the current year, the **Company** will award **You** the **Minimum Weekly Benefit Amount** as shown in the **Schedule**.

**CTD Benefit Offsets**

Subject to the **Minimum Weekly Benefit Amount**, the **Total Disability Benefit** shall be reduced by: (1) Social Security Disability Benefits, excluding any amounts for which **Your Dependents** may qualify because of **Your Disability**; (2) Social Security Retirement Benefits; (3) Individual or Group Disability Benefits, except for the Disability Benefits under the **OOIDA** sponsored Voluntary disability plan; (4) the amount of any disability income benefits from any automobile or no-fault policy or insurance; (5) the amount **You** receive as compensation for lost wages or lost income in a lawsuit or the settlement of a lawsuit; and (6) any income from employment or services, or from leasing **Your** power unit. **You** must provide tax schedules and returns to the **Company** for the purpose of calculating this offset.

**CTD Benefit Termination**

The **Continuous Total Disability** Benefit shall cease on the earliest of the following dates:

1. the date **You** are no longer **Continuously Totally Disabled**;
2. the date **Your** Social Security Disability Award ceases;
3. the date **You** attain age 70;
4. the date the **Maximum Benefit Period** shown in the **Schedule** for **Continuous Total Disability** has been reached;
5. the date the **Maximum Benefit Amount** shown in the **Schedule** for **Continuous Total Disability** has been reached;
6. the date on which **Continuous Total Disability** is not substantiated by objective medical evidence satisfactory to the **Company**; or
7. the date **You** die.

**CTD Benefit Definitions**

As used in this **Continuous Total Disability** Benefit:

**Benefit Week** means a 7-day period of time that begins on the day after the **Maximum Benefit Period** for **Temporary Total Disability** has been reached, and on the same day of each week thereafter.

**Continuous Care** means at least quarterly monitoring and/or evaluation of the disabling condition by a **Physician**. The **Company** must receive proof of continuing **Continuous Total Disability** on a quarterly basis. These requirements may be waived by the **Company**.

**Continuous Total Disability** or **Continuously Totally Disabled** means disability that: (1) prevents **You** from performing the duties of any occupation for which **You** are qualified by reason of education, training or experience; (2) requires the care and treatment of a **Physician**; and (3) requires that, and results in, **You** receiving **Continuous Care**. If **You** do not adhere to the treatment plan the **Physician** prescribes relating to **Your** disabling condition, **You** shall not qualify for a **Continuous Total Disability** Benefit. **You** cannot engage in any activity which results in earned income.

If **You** can perform an occupation which would provide an annual gross income equal to or greater than either the gross income from wages and/or the net income reported on Schedule C which **You** filed on **Your** most recent federal income tax return filed prior to the **Injury**, **You** are not **Continuously Totally Disabled**. **You** shall provide the **Company** with such federal income tax return in order to qualify for a **Continuous Total Disability** Benefit.

**Maximum Benefit Amount** means, with respect to **Continuous Total Disability**, the maximum benefits payable for **Continuous Total Disability Covered Losses**.

**Maximum Benefit Period** means, with respect to **Continuous Total Disability**, the maximum period for which benefits will be payable for a **Continuous Total Disability Covered Loss**. The **Maximum Benefit Period** begins after the **Waiting Period**, as indicated in the **Schedule**, has been satisfied. The length of the **Maximum Benefit Period** for **Continuous Total Disability** is shown in the **Schedule**. Benefits payable under the **Temporary Total Disability** Benefit will not be considered **Continuous Total Disability** Benefits for purposes of applying the **Maximum Benefit Period**.

Terms used in this **Continuous Total Disability** Benefit, but which refer to **Temporary Total Disability** and are defined in the **Temporary Total Disability** Benefit, are to be interpreted as defined in that Benefit.

## ACCIDENT MEDICAL EXPENSE (AME) BENEFIT

**AME Benefit Qualifications**

If **You** sustain an **Injury** that requires **You** to be treated by a **Physician**, within the **Medical Commencement Period** shown in the **Schedule**, the **Company** will pay the **Usual and Customary Charges** incurred for **Medically Necessary Covered Accident Medical Services** received due to that **Injury**, up to the **Maximum Benefit Amount** and **Maximum Benefit Period** shown in the **Schedule**, per **Insured Person**, for all **Injuries** caused by a single **Covered Accident**, subject to any applicable **Deductible Amount**.

The **Medical Commencement Period** starts on the date of the **Accident** that caused such **Injury**. The **Deductible Amount** for the Accident Medical Expense Benefit is the **Deductible Amount** shown in the **Schedule**, if any, which must be met from **Usual and Customary Charges** for **Medically Necessary Covered Accident Medical Services** incurred due to **Injuries You** sustained in that **Covered Accident**. If the **Injury** is incurred during the first twelve (12) consecutive months of the **Insured Person's** coverage under the **Policy** and is related to a **Pre-Existing Condition**, the Accident Medical Expense Benefit shall be subject to the limit as shown in the **Schedule**.

**AME Benefit Covered Accident Medical Services**

1. **Hospital** semi-private room and board (or room and board in an intensive care unit), **Hospital** ancillary services (including but not limited to, use of the operating room or emergency room), or use of an **Ambulatory Medical Center**;

2. Services of a **Physician** or a qualified nurse, if under the supervision of a Graduate Registered Nurse (R.N.), for **Home Health Care** which follows a five (5) day period of **Hospital** confinement and which is prescribed by a **Physician**;

3. Services by a qualified **Physician** for the treatment of a covered **Mental and Nervous Condition** due to an **Injury**. However, such charges will be considered a Covered **Accident Medical Expense** only to the extent that the charges do not exceed $25.00 per visit and are further limited to one visit per day with a maximum of twenty (20) visits. **Hospital** charges for in-patient treatment of a **Mental and Nervous Condition**, whether in a psychiatric **Hospital** or a general **Hospital**, will be considered a Covered **Accident Medical Expense**;

4. Ambulance, including air ambulance, service to or from a **Hospital** for one round trip;

5. Laboratory tests;

6. Radiological procedures;

7. Anesthetics and the administration of anesthetics;

8. Blood, blood products and artificial blood products, and the transfusion thereof;

9. Chiropractic and Acupuncture Care as shown in the **Schedule**;

10. Rental of **Durable Medical Equipment**, up to the actual purchase price of such equipment;

11. The initial supply, but not replacement of: casts, splints, trusses, braces, artificial limbs and artificial eyes subject to the **Accident Medical Expense** Benefit Exclusions section;

12. Medicines or drugs administered by a **Physician** or that can be obtained only with a **Physician's** written prescription;

13. Repair or replacement of **Sound Natural Teeth** damaged or lost as a result of a **Covered Injury**, up to the Dental Maximum, if any shown in the **Schedule**.

14. **Extended Care Facilities**; or

15. **Home Health Care**.

The foregoing **Covered Accident Medical Services** are subject to all of the limits as shown in the **Schedule**.

**AME Benefit Exclusions**

In addition to the GENERAL EXCLUSIONS in SECTION VI of this **Certificate**, charges for **Covered Accident Medical Services** do not include, and benefits are not payable with respect to, any expense for or resulting from:

1. repair or replacement of existing artificial limbs, artificial eyes or other prosthetic appliances or repair of existing **Durable Medical Equipment** unless for the purpose of modifying the item because **Injury** has caused further impairment in the underlying bodily condition;

2. dentures, bridges, dental implants, or treatment not related to the **Injury**;

3. eye glasses or contact lenses;

4. hearing aids or hearing examinations;

5. that portion of rental expense for **Durable Medical Equipment** that exceeds the usual purchase cost for similar equipment in the locality where the expense is incurred;

6. **Custodial Services**;

7. **Personal Comfort** or Convenience Items;

8. services of a Federal, Veterans, State or Municipal **Hospital** for which **You** are not liable for payment;

9. services or treatment which is covered by Medicare;

10. that portion of the fee for services or treatment which is more than the **Usual and Customary Charge**;

11. cosmetic, plastic or restorative surgery unless **Medically Necessary** for the treatment of an **Injury**;

12. services or treatment which are provided for in a settlement or court judgment;

13. services or treatment which are covered under any other insurance of any kind;

14. services or treatment for which **You** are not legally obligated to pay;

15. an **Extended Care Facility** stay that does not follow a **Hospital** confinement of five (5) days or more;

16. any mileage charges related to the **Covered Injury** unless authorized by the **Company**;

17. any translation charges related to the **Covered Injury** unless authorized by the **Company**; or

18. any lodging charges related to the **Covered Injury** unless authorized by the **Company**.

**AME Benefit Definitions**

As used in this **Accident Medical Expense** Benefit:

**Ambulatory Medical Center** means a facility that meets all of the following requirements:

1. operates under the laws of the state that it is situated in;

2. has a staff of **Physicians** and permanent facilities that are equipped and operated primarily for the purpose of providing medical services or performing medical procedures; and

3. provides continuous **Physician** and Graduate Registered Nurse (R.N.) services whenever a patient is in the facility. An **Ambulatory Medical Center** does not include a **Hospital** or a **Physician's** office or a clinic.

**Custodial Services** means any services which are not intended primarily to treat a specific **Injury**. **Custodial Services** include, but shall not be limited to services: (1) related to watching or protecting **You**; (2) related to performing or assisting **You** in performing any activities of daily living, such as: (a) walking; (b) grooming; (c) bathing; (d) dressing; (e) getting in or out of bed; (f) toileting; (g) eating; (h) preparing foods; or (i) taking medications that can usually be self-administered; and (3) that are not required to be performed by trained or skilled medical or paramedical personnel.

**Durable Medical Equipment** refers to equipment of a type that is designed primarily for use, and used primarily by people who are injured (for example, a wheelchair or a **Hospital** bed). It does not include items commonly used by people who are not injured, even if the items can be used in the treatment of **Injury** or can be used for rehabilitation or improvement of health (for example, a stationary bicycle or a spa).

**Extended Care Facility** means an institution that meets all of the following requirements:

1. operates under the laws of the state that it is situated in;
2. is approved by the Department of Health and Human Services or its successor;
3. is regularly engaged in providing skilled nursing care of sick or injured persons as inpatients at the patient's expense;
4. provides 24 hour a day nursing service by or under the supervision of a Graduate Registered Nurse (R.N.);
5. provides skilled nursing care under the supervision of a **Physician**; and
6. maintains a daily medical record of each patient.

**Home Health Care** means nursing care and treatment of **You** in **Your** home as part of an overall extended treatment plan. To qualify, the extended treatment plan must:

1. be approved in writing by the attending **Physician**;
2. be provided by a **Hospital** certified to provide **Home Health** services or by a certified **Home Health Care** agency;
3. begin within seven (7) days after discharge from a **Hospital**; and
4. follow a **Hospital** confinement of five (5) days or more.

No benefits are payable for **Home Health Care** services provided by:

1. a member of **Your** immediate family; or
2. a person residing in **Your** home.

**Hospital** means a facility that: (1) operates under the law of the state that it is situated in; (2) is approved by the Department of Health and Human Services or its successor; (3) has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis; (4) has 24-hour nursing service by Graduate Registered Nurses (R.N.s), on duty or on call; and (5) is supervised by one or more **Physicians**. A **Hospital** does not include: (1) a nursing, convalescent or geriatric unit of a **Hospital** when a patient is confined mainly to receive nursing care; (2) a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged; nor does it include any ward, room, wing or other section of the **Hospital** that is used for such purposes; or (3) any military or veterans **Hospital** or soldiers home or any **Hospital** contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces.

**Maximum Benefit Period** means, with respect to the **Accident Medical Expense** Benefit, the maximum period for which benefits shall be payable for **Covered Accident Medical Services** for or in connection with a single **Accident Medical Expense Covered Loss**. The length of the **Maximum Benefit Period** for **Accident Medical Expense**, which will commence on the first date of treatment or service, is shown in the **Schedule**.

**Medical Commencement Period** means the time period shown in the **Schedule** between the date of the **Accident** that caused the **Injury** and the date that the first **Covered Accident Medical Service** must be incurred for **Accident Medical Expense** Benefits to be payable under the Policy.

**Medically Necessary** means that a **Covered Accident Medical Service**: (1) is essential for diagnosis, treatment or care of the **Injury** for which it is prescribed or performed; (2) meets generally accepted standards of medical practice; and (3) is ordered by a **Physician** and performed under his or her care, supervision or order.

**Personal Comfort or Convenience Item(s)** means those items that are not **Medically Necessary** for the care and treatment of **Your Injury**. The term **Personal Comfort or Convenience Item(s)** includes, but is not limited to: (1) a private **Hospital** room, unless **Medically Necessary**; (2) television rental; and (3) **Hospital** telephone charges.

**Sound Natural Teeth** means natural teeth that are either unaltered or fully restored to their normal function and are disease free, have no decay, and are not more susceptible to injury than unaltered natural teeth.

**Usual and Customary Charge(s)** means a charge that is made for a **Covered Accident Medical Expense** Benefit that: (1) does not include charges that would not have been made if no insurance existed; (2) is the lesser of the usual charges for similar services, treatment, supplies, or **Hospital** room and board in the locality where the expense is incurred, or the negotiated rate of the **Preferred Provider** designated by the **Company**. (For a **Hospital** stay, the **Usual and Customary Charge** is based upon the expense for a semiprivate room and board

charge, unless the stay is a **Medically Necessary** stay in an intensive care unit); and (3) with respect to drugs, is the negotiated rate of the **Preferred Provider** designated by the **Company**. And if **You**, through no fault of **Your** own, are unable to use the **Preferred Provider** designated by the **Company**, then 125% of the Average Wholesale Price (AWP) will be considered Usual and Customary.

## TRAVEL ASSISTANCE

Travel Assistance will be available to the following **Covered Persons** when they are traveling 100 miles or more from **Your Principal Residence**: **You** and **Your Spouse/Domestic Partner** and/or **Dependent Child(ren)** if **Your Spouse/Domestic Partner** and/or **Dependent Child(ren)** are with **You** while **You** are covered under the **Policy**. **Your Spouse/Domestic Partner** and/or **Dependent Child(ren)** will not be covered while making a trip without **You**. The transportation and/or services provided under **Travel Assistance** must be pre-authorized by the **Company**. Under the **Policy**, **Travel Assistance** consists of the following:

- **TRAVEL ASSISTANCE BENEFITS**

  **Medical Evacuation**
  If a **Covered Person** is **Injured** or **Ill** on a **Covered Trip** and is being treated in a hospital, medical facility, clinic or by a medical provider which, based upon the **Company's** evaluation, cannot provide medical care in accordance with **Western Medical Standards**, the **Company** will arrange for, and cover the cost for, the transport of the **Covered Person** to the nearest hospital or medical facility which can provide such care. The **Company** must be contacted prior to the transport and the **Company** must pre-authorize the transport for benefits to be payable. No transport will be arranged for and/or covered without the prior recommendation of the attending **Physician**.

  For the limited purpose of determining the **Company's** liability, it has the sole right to determine the standard of care of a hospital or medical facility, clinic or medical provider. The maximum amount the **Company** will pay for this benefit is $50,000.00.

  **Assisted Repatriation**
  If a **Covered Person** is **Injured** or **Ill** on a **Covered Trip** and has sufficiently recovered to travel in a non-scheduled commercial air flight or a regularly scheduled air flight with special equipment and/or personnel with minimal risk to his or her health, the **Company** will arrange for, and cover the cost for, the transport of the **Covered Person** to **Your Principal Residence**, or to **Your** residence in the country where **You** are currently assigned (at **Your** option), in such transportation. The **Company** must be contacted prior to the transport and it must pre-authorize the transport for benefits to be payable. No transport will be arranged for and/or covered without the prior recommendation of the attending **Physician**. For the limited purpose of determining the **Company's** liability, it has the sole right to determine the scheduling, the mode of transportation and the special equipment and/or personnel which are covered. The maximum amount the **Company** will pay for this benefit is $25,000.00.

  **Post-Recovery Repatriation**
  If a **Covered Person** is **Injured** or **Ill** on a **Covered Trip** and has sufficiently recovered to travel in a regularly scheduled economy class air flight without special equipment or personnel with minimal risk to his or her health, the **Company** will pay for the increase in cost to change the travel date on the return air flight and/or for an upgrade in the seating, to **Your Principal Residence** or to the country where **You** are currently assigned (at **Your** option). The **Company** must be contacted prior to the change and must agree to the change in the travel date and/or upgrade for benefits to be payable. No change or upgrade will be made without the prior recommendation of the attending **Physician**. The upgrade will be subject to the **Company's** sole discretion. The maximum amount the **Company** will pay for this benefit is $10,000.00.

  **Return of Remains**
  If a **Covered Person** dies while on a **Covered Trip**, the **Company** will make arrangements and pay for the local preparation of the body for transport or cremation (not including the cost of cremation), travel clearances and authorizations, standard shipping container (not including urn or coffin) and transportation of the body or remains to its country of destination.

  The **Company** must be contacted prior to the preparation and transportation of the body and must pre-authorize the services and transportation for benefits to be payable. The maximum amount the **Company** will pay for this benefit is $5,000.00.

**Visit to Hospital**

If a **Covered Person** is scheduled to be hospitalized for more than seven (7) consecutive days while on a **Covered Trip**, the **Company** will arrange for, and cover the cost of, a regularly scheduled round trip economy class air flight of the person chosen by the **Covered Person** to visit the **Covered Person** while he or she is hospitalized. The **Company** must pre-authorize the transportation for benefits to be payable. The maximum amount the **Company** will pay for this benefit is $5,000.00.

**Return of Child**

If **You** are **Injured** or **Ill** while traveling with **Your Dependent Child(ren)** on a **Covered Trip**, causing such **Dependent Child(ren)** to be left unattended, **We** will arrange and pay for the transport of **Your Dependent Child(ren)** and for an attendant, if applicable. They will be transported by a regularly scheduled economy class air flight to the location chosen by **You**. **We** must pre-authorize the transportation of **Your Dependent Child(ren)** and attendant, if applicable, for benefits to be payable. The maximum amount **We** will pay for this benefit is $5,000.00 per **Dependent Child** and $5,000.00 per attendant.

**Return of Companion**

If a **Covered Person** is traveling with a companion while on a **Covered Trip** and due to the **Illness** or **Injury** to the **Covered Person** the **Covered Person** cannot complete the **Covered Trip** as scheduled, the **Company** will pay for the lesser of the change fee for the companion's return air flight or a one-way economy class flight. The **Company** must pre-authorize such costs for benefits to be payable. The maximum amount the **Company** will pay for this benefit is $5,000.00.

- **TRAVEL ASSISTANCE EXCLUSIONS**

The **Company** will not provide **Travel Assistance** if the **Coverage** is excluded under Section VI General Exclusions of the **Policy**, or if:

1. the **Covered Trip** was undertaken for the specific purpose of securing medical treatment;
2. the **Injuries** or **Illness** requiring medical services resulted from the deliberate ingestion of a poison, fume, noxious chemical substance; or the use of a prescription drug unless taken as prescribed by a **Physician**; or a non-prescription drug, unless taken in accordance with its directions. This exclusion shall not apply to the ingestion of alcohol;
3. with respect to a MEDICAL EVACUATION, the medical care, which is being provided, is consistent with **Western Medical Standards**. The **Company** has sole discretion in making that determination;
4. with respect to MEDICAL EVACUATION, it is not medically necessary to transport the **Covered Person** to another hospital or medical facility. The **Company** has the sole discretion in making that determination;
5. based upon the medical condition of the **Covered Person** and/or the local conditions and circumstances, the **Company** determines that MEDICAL EVACUATION or ASSISTED REPATRIATION is not appropriate. The **Company** has sole discretion in making that determination;
6. any local, state, country or international law prohibits the provision of the transportation or services provided for under this plan. The **Company** will be fully and completely excused from performance and discharged from any contractual obligation;
7. the **Company** did not pre-authorize the transportation and/or services.

- **TRAVEL ASSISTANCE LIMITATIONS**

**Aggregate Limit of Liability per Covered Accident**
$500,000

- **TRAVEL ASSISTANCE DEFINITIONS**

For purposes of **Travel Assistance** only, the following definitions apply:

**Covered Trip** means when a **Covered Person** is traveling more than 100 miles from **Your Principal Residence** and such travel is covered under the **Policy** and is not excluded under the TRAVEL ASSISTANCE EXCLUSIONS set forth above.

**Domestic Partner** means a person with whom **You** have a legally recognized relationship as a Domestic Partner, Civil Union Partner, Reciprocal Beneficiary, or a person who has registered in a state or local Domestic Partner registry with **You**.

**Illness** or **Ill** means a sickness or disease which impairs normal functions of the body.

**Principal Residence** means **Your** legal domicile.

**Western Medical Standards** means generally accepted medical standards comparable to those in the United States, Canada or Western Europe.

For the purpose of **Travel Assistance**, if there are any differences in the definition of a term between **Travel Assistance** and the **Policy**, the definition in **Travel Assistance** will govern.

- TRAVEL ASSISTANCE - OTHER PROVISIONS

**Reservation of Rights**
The **Company** reserves the right to suspend, curtail or limit coverage in any area in the event of rebellion, riot, military uprising, war, terrorism, labor disturbance, strike, nuclear accident, act of God or refusal of authorities to permit the **Company** to provide services or in any country for which a travel warning has been issued by the Department of State of the United States of America.

**Exempted Countries**
This Travel Assistance Plan is not available in the following countries: Iraq and Afghanistan. The **Company** further reserves its rights to modify this list upon ten (10) days notice to the **Policyholder**.

**Scope**
**Illness**, as covered under **Travel Assistance**, is solely covered under **Travel Assistance**, and in no way supercedes or modifies the other **Coverages** provided under the **Policy**. All other **Coverages** provided under the **Policy** are available only as a result of a **Covered Injury**.

To contact the **Company** regarding **Travel Assistance**, the **Covered Person** must call 1-866-670-6693 in the United States or Canada, and collect at +1-973-630-6693 from anywhere else in the world.

# SECTION V – LIMITATIONS

## Combined Single Limit

The **Company** will not pay more than the **Combined Single Limit** stated in the **Schedule**.

## Aggregate Limit of Liability

The **Company** will not pay more than the **Aggregate Limit of Liability** stated in the **Schedule**.

## Incarceration Limitation

Benefits being made to **You** will cease while **You** are incarcerated in a penal facility.  The benefit will resume, as if the benefits had been paid, subject to all **Policy** conditions, the 1st of the month following the date **You** are released from such facility.

## Pre-Existing Condition

Benefits under the **Policy** for an **Injury** that is incurred during the first twelve (12) consecutive months of the **Insured Person's** coverage under the **Policy**, and is due to a **Pre-Existing Condition**, shall be limited to the amount shown in the **Schedule**.

# SECTION VI – GENERAL EXCLUSIONS

A loss will not be a **Covered Loss** if it is caused in whole or in part by, or results in whole or in part from, the following:

1.  suicide or any attempt at suicide; an intentionally self-inflicted **Injury** or any attempt at an intentionally self-inflicted **Injury** or any **Injury** resulting from a provoked attack;
2.  illness or disease; medical or surgical treatment of illness or disease; or complications following the surgical treatment of illness or disease;
3.  **Cumulative Trauma** and/or **Repetitive Conditions**, unless as shown in the **Schedule**;
4.  **Occupational Disease**, unless (and to the extent as) specifically provided by the **Policy**;
5.  Hernia of any kind, unless as shown in the **Schedule**;
6.  Hemorrhoids of any kind;
7.  performing, learning to perform or instructing others to perform as a crew member of any vessel while covered under the Jones Act or the United States Longshore and Harbor Workers' Act, or similar coverage;
8.  war, or any act of war, whether declared or undeclared;
9.  involvement in any type of active military service;
10. any **Injury** for which **You** are entitled to benefits pursuant to any Workers' Compensation Law or other similar legislation;
11. any loss insured by employers' liability insurance;
12. **You** being intoxicated.  **You** are conclusively deemed to be intoxicated if the level of alcohol in **Your** blood exceeds the amount at which a person is presumed, under the law of the locale in which the **Accident** occurred, to be under the influence of alcohol if operating a motor vehicle, regardless of whether **You** are in fact operating a motor vehicle when the **Injury** occurs.  An autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of **Your** intoxication;
13. the deliberate ingestion of a poison, fume, noxious chemical substance; the use of a prescription drug unless taken as prescribed by a **Physician** or a non-prescription drug, unless taken in accordance with its directions.  This exclusion shall not apply to the ingestion of alcohol;
14. participation in the commission or attempted commission of a crime;

15. travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if **You** are:

    a.   riding as a passenger in any aircraft not intended or licensed for the transportation of passengers;

    b.   performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft;

    c.   riding as a passenger in an aircraft owned, leased or operated by the **Policyholder**, its designee or an **Insured Person**;

16. participation in any of the following activities:

| | | | |
|---|---|---|---|
| skydiving | hang gliding | parachuting | parasailing |
| automobile racing or stunts | bungee-jumping | scuba diving | heli-skiing |
| motorcycle racing or stunts | endurance tests | fire fighting | racing |
| acrobatic or stunt flying | extreme sport stunts | hunting | |

    flight on a rocket-propelled or rocket launched aircraft

    or any other extra-hazardous activity;

17. the use or release of explosives (however delivered), nuclear energy, radiation, chemicals, biological agents or diseases, or an organism or agent which disrupts the environmental or ecological balance of a geographic area, which results directly or indirectly from the intentional or unlawful act of a person or persons, including any resulting sickness or disease;

18. a cardiovascular event or stroke caused by exertion prior to or at the same time as an **Accident**; or

19. alcoholism, drug addiction or the use of any drug or narcotic except as prescribed by a **Physician** operating within his or her scope of authority.

## SECTION VII – CLAIMS PROVISIONS

**Notice of Claim:** Notice of claim must be given to the **Company** within twenty (20) days after **Your** loss, or as soon thereafter as reasonably possible. Notice given by or on behalf of the claimant to OneBeacon America Insurance Company at 877-216-2233, with information sufficient to identify **You**, is deemed notice to the **Company**.

**Claim Forms:** The **Company** will send claim forms to the claimant upon receipt of notice of claim. If such forms are not sent within fifteen (15) days after the giving of notice, the claimant will be deemed to have met the Proof of Loss requirements upon submitting, within the time fixed in the **Policy** for filing Proofs of Loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include **Your** name, the **Policyholder's** name and the **Policy** number.

**Proof of Loss:** Written Proof of Loss which is satisfactory to the **Company**, must be furnished to the **Company** within ninety (90) days after the date of the loss. If the loss is one for which the **Policy** requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as the **Company** may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required. The **Company** has a right to investigate the Proof of Loss and any relevant documents which **You** shall make available to the **Company** upon request.

**Time of Payment of Claims:** The **Company** will pay claims for all **Covered Losses**, other than **Covered Losses** for which the **Policy** provides any periodic payment, within thirty (30) days of written Proof of Loss that is acceptable to the **Company**.

Any **Covered Loss** to be paid in periodic payments will be paid at the end of each one (1) week period. The unpaid balance, which remains when the **Company's** liability ends, will then be paid when the **Company** receives the proof of **Covered Loss** that is acceptable to the **Company**.

**Recipient of Payment:** Upon receipt of written proof of death, payment for **Your** loss of life will be made to **Your** beneficiary or if there is no beneficiary designated, to **Your** survivors in the following order:

    a.  **Your** legally married spouse;

    b.  **Your** child(ren);

    c.  **Your** parents;

    d.  **Your** brothers and sisters;

    e.  **Your** estate.

Upon receipt of due written Proof of Loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the **Insured Person** suffering the loss. If an **Insured Person** dies before all payments due have been made, the amount still payable will be paid to his or her beneficiary, or if there is no beneficiary designated, as set forth above.

**Beneficiary Designation and Change:** **Your** designated beneficiary(ies) is (are) the person(s) so named by **You** as shown on the **Policyholder's** or its designee's records kept on the **Policy**.

If **You** are a legally competent person over the age of majority, **You** may change **Your** beneficiary designation at any time, unless an irrevocable designation has been made. The change may be executed, without the consent of the designated beneficiary(ies), by providing the **Policyholder** or its designee with a written request for change. When the request is received by the **Policyholder** or its designee, whether **You** are then living or not, the change of beneficiary will relate back to, and take effect as of, the date of execution of the written request, but without prejudice to the **Company** on account of any payment which is made prior to receipt of the request.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at the **Company's** option, to any relative by blood or connection by marriage of the payee, who, in the **Company's** opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

The **Company** shall pay benefits directly to any **Hospital** or person rendering covered services, unless **You** request otherwise in writing and provide proof that payment was made directly to the **Hospital** or person rendering **Accident Medical Covered Services.** Such request must be made no later than the time Proof of Loss is filed. Any payment the **Company** makes in good faith fully discharges the **Company's** liability to the extent of the payment made.

**Rehabilitation:** The **Company** will consider a rehabilitation program for **You** if **You** are receiving benefits under either the **Temporary Total Disability** Benefit or the **Continuous Total Disability** Benefit based upon an **Occupational Assessment.** The program must be mutually agreed upon by **You** and the **Company.** The extent of **Company** participation will be determined by mutual agreement and benefits payable will continue during **Your** rehabilitation.

**Sunset:** In no event shall a claim made for losses **You** sustained be considered valid and collectible in accordance with the **Policy** unless full details of such claim are presented to the **Company** within three (3) years from the date of the **Accident** which is the basis of such claim.

**Physical Examination and Autopsy:** The **Company** has the right, at its own expense, to examine the person of any **Insured Person** whose **Injury** is the basis of a claim, when and as often as it may be reasonably required while a claim is pending. The **Company** may also require an autopsy where it is not prohibited by law.

**Conditional Claim Payment:** If **You** suffer a **Covered Loss(es)** as the result of **Injuries** for which a third party may be liable, the **Company** will pay the amount of benefits otherwise payable under the **Policy.** However, if **You** receive payment from the third party, **You** agree to refund to the **Company** the lesser of: (1) the amount actually paid by the **Company** for such **Covered Loss(es)**; or (2) an amount equal to the sum actually received from the third party for such **Covered Loss(es).** If **You** do not receive payment from the third party for such **Covered Loss(es),** the **Company** reserves the right to subrogate under the Subrogation clause of the **Policy.**

At the time such third party liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgment, arbitration or otherwise. This provision shall not apply where prohibited by law.

**Arbitration:** Any contest to a claim denial under the **Policy** shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The arbitration shall occur at the offices of the American Arbitration Association nearest to **You** or the person claiming to be **Your** beneficiary. The arbitrator(s) shall not award consequential or punitive damages in any arbitration under this section. This provision does not apply if **You** or the person claiming to be **Your** beneficiary is a citizen of a state where the law does not allow binding arbitration in an insurance policy, but only if the **Policy** is subject to its laws. In such a case, binding arbitration does not apply. This provision bars the institution of any individual or class action lawsuit brought by **You** or **Your** beneficiary.

**Legal Actions:** In those states where binding arbitration is not allowed, no legal action for a claim can be brought against the **Company** until sixty (60) days after receipt of Proof of Loss. In those states where binding arbitration is not allowed, no legal action for a claim can be brought against the **Company** more than three (3) years (six (6) years in South Carolina and Wisconsin, five (5) years in Kansas, Florida and Tennessee) after the time for giving Proof of Loss. In those states where binding arbitration is allowed, binding arbitration shall supercede this provision.

**Subrogation:** The **Company** has the right to recover all payments including future payments, which the **Company** has made, or will be obligated to pay in the future, to **You, Your** heirs, personal and/or legal representative, beneficiary or beneficiaries or any other person for the **Covered Injury** when another person or entity is liable for such loss. The **Company** will be reimbursed first from such recovery to the extent of its payments to **You, Your** heirs, personal and/or legal representative, beneficiary or beneficiaries or any other person. **You, Your** heirs, personal and/or legal representative, beneficiary or beneficiaries or any other person who receives payment from the **Company** agrees to assist the **Company** in preserving its rights against those responsible for such loss, including but not limited to, signing subrogation forms supplied by the **Company.**

The **Company** will not pay **You, Your** heirs', personal and/or legal representative's, beneficiary or beneficiaries' or any other person's attorney's fees and/or costs associated with the recovery of the loss or the recovery of funds, nor will such attorney's fees and/or costs reduce the reimbursement the **Company** is due on a pro rata or other basis unless prohibited by law.

**Right to Recover Overpayments:** In addition to any rights of recovery, reimbursement or subrogation provided to the **Company** herein, when payments have been made by the **Company** with respect to a **Covered Loss** in an amount in excess of the maximum amount of payment necessary to satisfy an obligation under the terms of the **Policy**, the **Company** shall have the right to recover such excess payment, from any person to whom such payments were made. The **Company** maintains the right to offset the overpayment against other benefits payable to **You** or any other person under the **Policy** to the extent of the overpayment.

## SECTION VIII – GENERAL PROVISIONS

**Entire Contract:** The **Policy**, together with any riders, endorsements, amendments, applications, completed enrollment materials and attached papers, if any, make up the entire contract between the **Policyholder** and the **Company**. In the absence of fraud, all statements made by the **Policyholder** or its designee, or **You** will be considered representations and not warranties. No written statement made by **You** will be used in any contest unless a copy of the statement is furnished to **You** or **Your** beneficiary or personal representative.

**Change or Waiver:** No changes in the **Policy** will be valid until approved by an officer of the **Company**. The approval must be noted on or attached to the **Policy**. No agent may change the **Policy** or waive any of its provisions.

**Incontestability:** The validity of the **Policy** will not be contested after it has been in force for two year(s) from the **Policy** Effective Date, except as to nonpayment of premiums.

**Noncompliance With Policy Requirements:** Any express waiver by the **Company** of any requirements of the **Policy** will not constitute a continuing waiver of such requirements. Any failure by the **Company** to insist upon compliance with any **Policy** provision will not operate as a waiver or amendment of that provision.

**Clerical Error:** A clerical error or omission will not increase or continue **Your** coverage, which otherwise would not be in force. If **You** apply for insurance for which **You** are not eligible, the **Company** will only be liable for any premiums paid to it.

**Conformity with Statute:** Terms of the **Policy** that conflict with the laws of the state where it is delivered are amended to conform to such laws.

**Audit:** The **Company** will have the right to inspect and audit, at any reasonable time, all records and procedures of the **Policyholder** or its designee that may have a bearing on this insurance. The **Company** reserves the right to charge or refund premium as applicable.

**Assignment of Interest:** The **Policy** is non-assignable.

**Right to Examine Coverage:** **You** may terminate the coverage provided under the **Policy** for any reason within ten (10) days after initial enrollment. Written notice of termination should be forwarded by mail, fax or electronic mail, or in person to the **Policyholder**, its designee, or the **Company**. Any premium paid will be refunded and the coverage will be treated as if it had never been issued.

**Offset Debt:** The **Company** will have, and may exercise at any time, the right to offset any balance or balances, whether on account of premiums or otherwise, due from the **Policyholder**, its designee, or **You** to the **Company** against any balance or balances, whether on account of losses or otherwise, due from the **Company** to the **Policyholder**, its designee, or **You**.

**Claims for Workers' Compensation and Other Insurance:** No benefits shall be payable under the **Policy** for any loss for which **You** claim or file for any Workers' Compensation, employers' liability, occupational disease or similar law or any other insurance until such claim or filing is approved or denied. Upon approval or denial the **Company** shall determine its liability under the terms and conditions of the **Policy**. If such a claim is denied, and **You** appeal the denial, no benefits will be paid under the **Policy** until a ruling is made, at which time, the **Company** shall determine its liability under the terms and conditions of the **Policy**. The **Company** reserves the right to recover, from **You**, any benefits paid under the **Policy** which are subsequently paid for under any Workers' Compensation, employers' liability, occupational disease or similar law or any other insurance.

## SECTION IX – GENERAL DEFINITIONS

**Accident(s) or Accidental** means a sudden, unexpected, specific and abrupt event that occurs by chance at an identifiable time and place during the **Policy** term.

**Accident Commencement Period** means the time period, shown in the **Schedule**, between the date of the **Accident** which caused the **Injury** and the date the **Loss** must occur for death, dismemberment or paralysis benefits to be payable under the **Policy**.

**Actively At Work** means that the person is under **Dispatch**.

**Aggregate Limit of Liability** means the total benefits the **Company** will pay for a **Covered Accident(s)** set forth in the **Policy**. For purposes of the **Aggregate Limit of Liability** provision, **Covered Accident(s)** will include a **Covered Loss(es)** arising out of a single event or related events or originating cause occurring within a one (1) day period and includes a resulting **Covered Loss(es)**. If the total benefits under the **Aggregate Limit of Liability** is not enough to pay full benefits to each **Insured Person**, the **Company** will pay each one a reduced benefit based upon the proportion that the **Aggregate Limit of Liability** bears to the total benefits which would otherwise be paid.

**Co-Driver** means a person who drives in the same unit on a full-time basis with the **Primary Driver**. A **Co-Driver** must complete a **Co-Driver** Agreement (which is attached as Exhibit 1) which is on file with **OOIDA** identifying himself or herself as a **Co-Driver**. If the **Insured Person** does not satisfy the criteria of a **Co-Driver** at the time of enrollment, his or her coverage shall be void and the premium returned. If a **Co-Driver** becomes a **Primary Driver** for more than fourteen (14) days, he or she must notify **OOIDA** immediately. After a **Co-Driver** has been a **Primary Driver** for more than fourteen (14) days, his or her premium will change to the **Primary Driver** rate.

**Combined Single Limit** means, with respect to any one **Insured Person**, the total amount of benefits that are payable under the **Policy** for or in connection with a **Covered Injury** sustained as the result of any one **Covered Accident**. When the **Combined Single Limit** has been reached, no further benefits shall be payable under the **Policy**, with respect to that **Insured Person** for or in connection with an **Injury** sustained as the result of that one **Covered Accident**.

**Company** means OneBeacon America Insurance Company.

**Continuous Total Disability or Continuously Totally Disabled** means disability that: (1) prevents **You** from performing the duties of any occupation for which **You** are qualified by reason of education, training or experience; (2) requires the care and treatment of a **Physician**; and (3) requires that, and results in, **You** receiving **Continuous Care**. If **You** do not adhere to the treatment plan the **Physician** prescribes relating to **Your** disabling condition, **You** shall not qualify for a **Continuous Total Disability** Benefit. **You** cannot engage in any activity which results in earned income.

If **You** can perform an occupation which would provide an annual gross income equal to or greater than either the gross income from wages and/or the net income reported on Schedule C which **You** filed on **Your** most recent federal income tax return filed prior to the **Injury**, **You** are not **Continuously Totally Disabled**. **You** shall provide the **Company** with such federal income tax return in order to qualify for a **Continuous Total Disability** Benefit.

**Contract Driver** is as described in SECTION I.

**Covered Accident** means an **Accident** that results in a **Covered Loss**.

**Covered Injury** means an **Injury** directly caused by an **Accident**, which is independent of all other causes, results from a **Covered Accident**, occurs while **You** are insured under the **Policy**, and results in a **Covered Loss**.

**Covered Loss(es)** means a loss which meets the requisites of one or more benefits, results from a **Covered Injury**, and for which benefits are payable under the **Policy**.

**Cumulative Trauma and/or Repetitive Conditions** means conditions which impair the normal physiological function of the body over an extended period of time, but which do not arise as the result of a single **Accident**.

**Deductible Amount** means the portion of the **Usual and Customary Charges** for **Medically Necessary Covered Accident Medical Services**, incurred due to **Injuries You** sustained in a **Covered Accident**, which must be met before the **Accident Medical Expense** Benefit will be paid. The **Deductible Amount** is shown in the **Schedule**.

**Dependent Child(ren)** means **Your** unmarried children, including natural children from the moment of birth, step or foster children, or adopted children, from the date of the final decree of adoption, under age 19, (19-23 if attending an accredited institution of higher learning on a full-time basis) and who relies on **You** for more than 50% of his or her support and is taken as a dependent on **Your** Federal Income Tax Return. It also includes any of **Your** unmarried **Dependent Child(ren)** who are incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on **You** for support and maintenance as defined herein.

The **Company** may require proof of the **Dependent Child(ren)'s** incapacity and dependency within 60 days before the **Dependent Child(ren)** reach the age limit specified above. The **Company** may request that satisfactory proof of the **Dependent Child(ren)'s** continued incapacity and dependency be submitted to the **Company** on an annual basis. If the requested proof is not furnished within 31 days of the request, such child(ren) shall no longer be considered **Dependent Child(ren)** as of the end of that 31 day period.

**Designee** is the Owner-Operator Independent Drivers Association, Inc. (OOIDA).

**Dispatch** means when **You** are:
1. in route to pick up a load;
2. picking up a load;
3. in route to deliver a load;
4. unloading a load;
5. in route after dropping off a load;
6. waiting for a load if **You** are not at home;
7. required to perform services by or for a motor carrier; or
8. performing activities to comply with federal or state laws to satisfy motor carrier or commercial driving requirements.

**Dispatch** does not include an **Injury** during usual travel between, to, and from work or a bona fide leave of absence or vacation.

For purposes of the **Policy**, if **You** are performing maintenance and/or repairs on a power unit which **You** own or lease, **You** will be deemed to be under **Dispatch**. **You** must provide proof which is satisfactory to the **Company** that the **Injury** was sustained while performing such maintenance or repairs in order to receive **Occupational Accident Benefits** for the **Injury**.

A **Co-Driver** will be deemed to be under **Dispatch**:
1. if the power unit in which he or she is riding is under **Dispatch**; or
2. if he or she is performing maintenance and/or repairs on a power unit which is owned or leased by the **Primary Driver** with whom such **Co-Driver** drives.

**Eligible Person** means a person who is described in SECTION I.

**Employee Driver** is as described in SECTION I.

**Immediate Family Member** means a person who is related to **You** in any of the following ways: **Spouse**, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or placed for adoption, or stepchild) or any person residing in **Your** home.

**Injury or Injuries** means bodily harm or bodily damage.

**Insured Person** means a person who: (1) is an **Eligible Person** as described in SECTION I; (2) has enrolled for coverage under the **Policy** and agrees to participate in the **Trust**; and (3) has coverage in effect according to the terms of the **Policy**.

**Maximum Benefit Period** is as shown in SECTION II. The **Maximum Benefit Period** begins after the **Waiting Period** has been satisfied.

<u>Mental and Nervous or Depressive Condition</u> means mental, nervous or emotional diseases or disorders of any type including schizophrenia, dementia, organic brain syndrome, delirium, amnesia syndromes, and organic delusional or hallucinogenic syndromes.

<u>Non-Occupational</u> means an activity involving **You**, which occurs while **You** are not under **Dispatch**.

<u>Non-Occupational Accident Benefits</u> means the benefits the **Company** will pay for **Non-Occupational Covered Losses** as shown in the SCHEDULE OF BENEFITS Section.

<u>Occupational</u> means an activity involving **You**, which occurs or arises out of or in the course of **You** performing services while under **Dispatch**. **Occupational** does not encompass any period of time during the course of everyday travel to and from work or a bona fide leave of absence or vacation.

<u>Occupational Accident Benefits</u> means the benefits the **Company** will pay for **Occupational Covered Losses** as shown in the SCHEDULE OF BENEFITS Section.

<u>Occupational Assessment</u> means a test of vocational capabilities. The process includes a review of medical records, **Injury** and treatment, history and background education, military, previous occupation(s), evaluation of basic skills such as reading, understanding, spelling and/or math capabilities, and vocational alternatives.

<u>Occupational Cumulative Trauma and/or Repetitive Conditions</u> means bodily **Injury** to **You** caused by the combined effect of repetitive physical **Occupational** activities extending over a period of time, where: (1) such condition is diagnosed by a **Physician**; (2) the **Insured Person's** performance of the activities causing the **Injury** occurred during the **Policy** Period, and the onset of the **Injury** occurred and was reported during the **Policy** period; and (3) such activities resulted directly and independently of all other causes in a **Covered Loss**.

<u>Occupational Disease</u> means a sickness which results in disability or death, and is caused by exposure to environmental or physical hazards during the course of **Your Occupational** activities, where: (1) such condition is diagnosed by a **Physician**, and is generally accepted by the National Centers for Disease Control to be a disease caused by such hazards; (2) exposure to such hazards is not an **Accident** but is caused or aggravated by the conditions under which the **Insured Person** performs **Occupational** services; (3) **Your** last day of last exposure to the environmental or physical hazards causing such condition occurs during the **Policy** Period; and (4) such exposure results directly and independently of all other causes in a **Covered Loss**.

<u>Owner-Operator</u> is as described in SECTION I.

<u>Owner-Operator Independent Drivers Association, Inc. (OOIDA)</u> is the sponsor of the **Owner-Operator Independent Drivers Association, Inc.** Insurance Trust (Policyholder).

<u>Owner-Operator Services, Inc.</u> is the exclusive insurance producer for the **Owner-Operator Independent Drivers Association, Inc. (OOIDA)**.

<u>Physician</u> means a practitioner of the healing arts acting within the scope of his or her license who is not: (1) **You**; or (2) **Your Immediate Family Member**; or (3) a practitioner retained by the **Policyholder** or its designee.

<u>Policy</u> means the Occupational Accident Insurance **Policy** referenced in this Certificate.

<u>Policyholder</u> is the group named as **Policyholder** on the front page of the **Policy**.

<u>Pre-Existing Condition</u> means a condition for which **You** have sought or received medical advice or treatment during the twelve months immediately preceding **Your** effective date of coverage under the **Policy**.

<u>Preferred Provider</u> means a **Physician** or **Hospital** with which the **Company** has an agreement or contract to perform a covered service or treatment at an agreed upon rate, or a company which provides prescription drugs at an agreed upon rate to **Insured Persons** of the **Company**. In the following situations only, a non-preferred provider used by an **Insured Person** will be deemed to be a **Preferred Provider**:

1.   There is no **Preferred Provider** located within a 50-mile radius of the legal residence of the **Insured Person** and it is not reasonable to expect the **Insured Person** to seek treatment or services from a **Preferred Provider**;

2.   The **Insured Person** received treatment or services under **Emergency Conditions** and it would not have been reasonable to expect the **Insured Person** to have sought treatment or services from a **Preferred Provider**; or

3.   The **Medically Necessary Accident Medical Services** required by the **Insured Person** are not available through a **Preferred Provider**.

For purposes of this provision, an **Emergency Condition or Conditions** is where a **Covered Injury**: 1) renders the **Insured Person** unable to select a **Physician**, **Hospital**, or other health care provider; 2) requires an emergency responder to select a **Physician**, **Hospital**, or other health care provider without the prior approval of the **Insured Person**; or 3) requires immediate medical care in order to prevent irreparable bodily harm or death and the nearest qualified **Physician**, **Hospital**, or other health care provider is a non-preferred provider.

**Primary Driver** means a person who has ownership or leases a power unit and is the principal driver of the power unit. A **Primary Driver** must complete a form which is on file with **OOIDA** identifying himself or herself as a **Primary Driver**.

**Schedule** is SECTION II of this **Certificate**.

**Spouse** means **Your** legal spouse.

**Temporary Replacement Driver** is as described in SECTION I.

**Temporary Total Disability or Temporarily Totally Disabled** means disability that: (1) prevents **You** from performing the **Material and Substantial Duties** of **Your** occupation as a commercial truck driver; (2) requires the care and treatment of a **Physician**; and (3) requires that, and results in, **You** receiving **Continuous Care**. If **You** do not adhere to the treatment plan the **Physician** prescribes relating to **Your** disabling condition, **You** shall not qualify for **Temporary Total Disability Benefits**. **You** cannot engage in any activity which results in earned income.

For purposes of this section **Material and Substantial Duties** shall mean the duties which **You** are required to perform as an **Owner-Operator**, **Contract Driver**, **Employee Driver**, or **Temporary Replacement Driver**, as applicable.

**Trust** is the **Owner-Operator Independent Drivers Association, Inc.** Insurance Trust established by the **Owner-Operator Independent Drivers Association, Inc.** on August 6, 1997 with the Bank of America, N.A. as Trustee.

**Waiting Period** means the consecutive number of days **You** must be **Temporarily Totally Disabled** or **Continuously Totally Disabled** before benefits become payable under the **Temporary Total Disability Benefit** or the **Continuous Total Disability Benefit** provisions of the **Policy**. *Benefits are not retroactive to the first day of disability.* The **Waiting Period** is shown in the **Schedule**.

**You and Your** refers to the **Insured Person**.

In Witness Whereof, We have caused the Policy to be executed and attested.


Dennis R. Smith, Secretary
OneBeacon America Insurance Company

Michael Miller, President & CEO
OneBeacon America Insurance Company

# DESCRIPTION OF AVAILABLE SERVICES
# ATTACHMENT A

The following services will be provided to **You** if **You** are covered under an Occupational Accident Policy, provided through the Owner-Operator Independent Drivers Association, Inc., as well as **Your** eligible dependents as defined in such policy.

**Medical Travel Assistance Services:** (available to **You** while **You** are traveling 100 miles or more from **Your** Principal Residence. Also available to **Your** eligible dependents provided such dependents are traveling with **You.**)

- Worldwide referrals to appropriate medical and dental care *
- Monitoring of treatment by Regional Medical Advisors
- Facilitation of hospital payments (upon receipt of guarantee to reimburse)
- Transfer of insurance information and medical records to medical providers
- Facilitation of hospital admission and discharge planning
- Obtaining medications, vaccines and blood where unavailable, or prescription medications if lost or stolen (provided it is legally permissible)
- Coordinating replacement of corrective lenses or medical devices if lost, stolen or broken
- Providing case updates to family, employer and/or home physician (with approval)
- Facilitation of hotel arrangements for convalescence
- Dispatch of doctors/specialists in special emergency situations

**Personal Travel Assistance Services:** (available to **You** while **You** are traveling 100 miles or more from **Your** Principal Residence. Also available to **Your** eligible dependents provided such dependents are traveling with **You.**)

- Provision of pre-travel and health information such as: 1) culture, weather, currency and regional health concerns; 2) immunizations and vaccinations required; 3) entry and exit requirements; 4) transportation information *
- Provision of real-time Security Intelligence for destination *
- Facilitation of replacement of lost or stolen travel documents, such as tickets or passports
- Arrangement of emergency travel, including airlines and hotels
- Facilitation of transfer of emergency funds
- Legal referrals and assistance in obtaining bail bonds
- Emergency translation services or referrals to local interpreter services
- Transmission and receipt of emergency messages
- Coordinating emergency boarding for, and/or return of pet

*\* These services are available prior to or while traveling 100 miles or more from Your Principal Residence.*

To access these Travel Assistance Services, call 1-866-670-6693 in the United States or Canada, and collect at +1-973-630-6693 from anywhere else in the world.

Attachment A

**Identity Theft Resolution Services:** (available to **You** and **Your** eligible dependents)

- Personal advocate assigned to victim to work one-on-one, from first call to crisis resolution
- Advocate-assisted notification, at victim's election, to place fraud alerts with Trans Union, Experian and Equifax
- Unlimited access to Crisis Resolution Center's toll free telephone number
- Assistance in filing a police report and scheduling an interview with the police
- Creation of the Fraud Victim Affidavit
- Preparation of all documents and phone calls needed for creditor notification
- Assistance with notification to applicable government agencies, associations, etc.
- Enrollment in one year of credit monitoring, at victim's election, with weekly alerts, including 3-in-1 credit report
- Enrollment in one year of fraud monitoring, at victim's election, with Intersections, Inc.
- Comprehensive case file creation available for presentation to company for insurance claims and to law enforcement
- One full year of active follow-up after resolution is complete
- Pro-active assistance following theft or loss of wallet/purse (to minimize risk)

To access these Identity Theft Resolution Services, call **1-866-799-6695** and reference the Program # 216-999-999 and Group Code OBAH.

**Discount Prescription Program Services:** (available to **You** and **Your** eligible dependents)

- **You** are eligible to receive a prescription Discount Card to present at **Your** local pharmacy. (see below)
- This Discount Card is accepted at over 53,000 pharmacies.
- A website is available for **You** to compare drug prices by specific pharmacy location. (see below)
- Over 11,000 generic drugs are available at a discount.
- Over 5,000 brand drugs are available at a discount.
- This Program may provide a better discount than **Your** current medical/prescription plan, if applicable

To learn more about these Discount Prescription Program Services go to:

http://allrxcard.com/trkrx

# CO-DRIVER AGREEMENT
# EXHIBIT 1

I hereby confirm that I am a Full-Time Co-Driver with the Primary Driver that I have listed below, and that I drive in the same unit with this person at all times. If at any time I become the sole driver for more than fourteen (14) days, I will immediately notify OOIDA. I further understand that if this occurs, I will become a Primary Driver and my rate will be adjusted accordingly. I also understand that if I give any inaccurate, false or misleading information to OOIDA, any benefits for which I am eligible under this insurance coverage will be denied.


PRIMARY DRIVERS NAME:_____

MEMBER#:_____


CO-DRIVERS NAME:_____

MEMBER#:_____


CO-DRIVER'S SIGNATURE:_____

DATE:_____

Exhibit 1

AH 282 OA OOIDA 06 07

Page 32 of 35
Edition 08-01-14

# MEDICAL BILLING GROUP PROCEDURES

## EXHIBIT 2

Dear Member:

We are glad to have you as a member of OOIDA and appreciate your participation in the benefit plans that we offer.  The Medical Benefits Group offers the following benefit plans:

| | |
|---|---|
| Accidental Death & Dismemberment (AD&D) | Group Dental Benefit Plans |
| Medical Benefit Plans | Term Life Insurance Plan |
| Occupational Accident Plans | Retirement Plan |
| Voluntary Group Short Term Disability Plans | Voluntary Vision Care Plan |
| Identity Management Service | Cancer Select Plus Plan |

The majority of the statements that are generated through our department are printed on the 9th of the month with all premiums due the first of the following month.  If your payment is not in our office by the 5th of the month, in which it is due, it is considered past due.  Payments not received by the 20th of the month, in which they are due, will be put into Pending Cancellation status. If payment is not received by the last business day of the month, your coverage(s) will be cancelled back to the 1st day of that month.  Any claims that may have been incurred during that period will not be covered.   If you are unable to have your payment in by the due date, please contact our office and we will set up a payment arrangement.

In the event that you request a cancellation of coverage, please be advised that any cancellation request received after the 15th of the month will not be effective until the 1st day of the following month.  Any cancellation request received before the 15th of the month may be cancelled back to the 1st of the month providing there are no active claims.

If you have any questions regarding our billing or cancellation procedures, please feel free to call our office at 1-800-715-9369.  The Medical Billing Department is available to take your calls Monday through Friday from 7:30 am to 4:30 pm, CST.

Thank you in advance for your compliance to our procedures.

Medical Billing Group
OOIDA

Exhibit 2



**OneBeacon** ℠
I N S U R A N C E

**Policyholder:** **Owner-Operator Independent Drivers**
**Association, Inc. Insurance Trust**

**Policy Number:  216-000-559**

## CERTIFICATE ENDORSEMENT

For purposes of clarification, and notwithstanding any language in the Policy to the contrary, a **Co-Driver** who is covered under the **Policy** will be considered to be under **Dispatch** when the power unit in which he or she is riding is under **Dispatch**, and will therefore be eligible to receive full **Occupational Accident** Benefits on the same basis as a **Primary Driver** who is covered under the **Policy**.

Except for the above, this Certificate Endorsement does not vary, alter, waive, or extend any of the terms of the **Certificate** to which it is attached.

Endorsement No. 1

In Witness Whereof, We have caused this Endorsement to be executed and attested.

*Dennis R. Smith*

Dennis R. Smith, Secretary
OneBeacon America Insurance Company

*Michael Miller*

Michael Miller, President & CEO
OneBeacon America Insurance Company

Certificate Endorsement No. 1

AH 282 OA OOIDA 06 07



## ONEBEACON AMERICA INSURANCE COMPANY

## ATLANTIC SPECIALTY INSURANCE COMPANY

### CERTIFICATE OF ASSUMPTION
#### EFFECTIVE OCTOBER 1, 2012

### Policy #216-000-559
**Policyholder: Owner-Operator Independent Drivers Association, Inc. Insurance Trust**
**Trustee: Bank of America, N.A.**
### Participating Member: Owner-Operator Independent Drivers Association, Inc.

You are hereby notified that, for all purposes on and after the Effective Date specified above, Atlantic Specialty Insurance Company ("Atlantic Specialty") has assumed liability for the policy of insurance, upon which this certificate is based, that was originally issued by OneBeacon America Insurance Company ("OneBeacon America").

On and after the Effective Date, Atlantic Specialty has assumed all rights and duties under the policy and all references in the policy and certificate to OneBeacon America are hereby changed to Atlantic Specialty. All correspondence and inquiries such as policy changes and notices of claims should continue to be submitted to the current addresses and phone numbers, but under the company name of Atlantic Specialty Insurance Company.

This Certificate of Assumption forms a part of and has been attached to the insurance policy issued by OneBeacon America.

IN WITNESS WHEREOF, Atlantic Specialty Insurance Company has caused this Certificate of Assumption to be duly signed and issued.

_____        _____
Secretary                              President

AH 990 ASSU CW 04 12

AH 282 OA OOIDA 06 07                                    Page 35 of 35
                                                          Edition 08-01-14

# Exhibit "B"



# *Great Fidelity Life Insurance Company*

*P.O. Box 9510, Wichita, Kansas 67277-0510*
● *Telephone: (316) 794-2200* ● *Fax: 316-794-8470*
***Administrators for Atlantic Specialty Insurance Company (ASIC)***

ACCIDENTAL DEATH CLAIM FORM     **PLEASE NOTE THE IMPORTANT NOTICES ON PAGE 3 AND 4.**

The issuance of this form is not an admission of the existence of any insurance or the validity of any claim and is without prejudice to ASIC's legal rights.

## PART I – TO BE COMPLETED BY THE CLAIMANT

| | |
|---|---|
| Name of deceased: NORMAN E KIMBLE | Date of birth: 2/27/57 |
| Address: 196 BROWN RD. PO BOX 162 REBERSBURG PA 16872 | Occupation: TRUCK DRIVER |
| Name of employer: Logix Transportation | |

Name and address of claimant: LINDA KIMBLE   196 BROWN RD. PO BOX 162
REBERSBURG PA 16872

Relationship of deceased to claimant:
☑ Spouse   ☐ Domestic Partner   ☐ Child   ☐ Parent   ☐ Other

| Date of accident: 01 SEP 2016 | Hour: 3:30 | ☐ AM ☑ PM | Where did accident happen? SOUTH CAROLINA |
|---|---|---|---|

How did the accident happen?
DRIVING ACCIDENT

What was the deceased doing at the time of the accident?
DRIVING

What injuries were received?
FATAL

Names And Addresses Of Eyewitnesses:
Name:_____
Address:_____
Name:_____
Address:_____

| Name of Hospital: N/A | Stay In Hospital From:        To: |
|---|---|

Names and addresses of doctors attending the deceased following the accident:
Name:_____
Address:_____     N/A
Name:_____
Address:_____

Was this accident reported to the police? ☑ Yes ☐ No
If yes, please provide copy of police report and name of police department.

**Accidental Death Claim** - Was an inquest held? ☐ Yes ☑ No
If yes, please provide a certified copy of the verdict:

**Accidental Death Claim** - Was an autopsy performed? ☐ Yes ☐ No If yes, please provide the name of the medical examiner: Name:_____ Address:_____

**Accidental Death Claim** – In what capacity are you making this claim?
☐ Beneficiary   ☐ Administrator*   ☐ Executor*   ☐ Guardian*   ☐ Trustee*   ☐ Assignee*
*Please attach a copy of authoritative documents.

**PLEASE COMPLETE THE MEDICAL AUTHORIZATION ON PAGE 2.**

Fraud Notice: Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

| SIGNATURE: | DATE: |
|---|---|
| _Linda Kay Kimble_ | 11-10-16 |

Exhibit "C"



# Inter-Americas Insurance Corp., Inc.

P.O. Box 9510, Wichita, Kansas 67277-0510
• *Telephone: (316) 794-2200  • Fax: 316-794-8470*
**Administrators for Atlantic Specialty Insurance Company**

## CLAIM FORM – OCCUPATIONAL ACCIDENT

Please: 1. **mail completed form to : Inter-Americas Insurance Corporation, Inc, P.O. Box 9510, Wichita, KS 67277**; 2. Keep a copy for your records: and 3. If you have questions, please contact your claims representative.

### CLAIMANT INFORMATION

NAME: Norman E. Kimble

SOCIAL SECURITY NUMBER: ▓▓▓▓▓▓

ADDRESS: 1916 Brown Road, P.O. Box 162

CITY: Rebersburg   STATE: PA   ZIP CODE: 16872

TELEPHONE NUMBER: 814-349-1237   MARITAL STATUS: Married   DATE OF BIRTH: 02/27/1957   GENDER: (MALE) FEMALE

OOIDA MEMBERSHIP NUMBER: Policy No. COL 25622

### POLICYHOLDER/TRUCK INFORMATION

POLICYHOLDER: Norman E. Kimble

CLAIMANT DRIVER (select one):
☒ OWNS THE TRUCK   ☐ LEASES THE TRUCK   ☐ LEASES THE TRUCK WITH OPTION TO BUY

THE TRUCK DRIVEN BY THE CLAIMANT IS A (select one):
☐ FLAT-BED   ☐ CONTAINER   ☐ REFRIGERATOR   ☐ BOX
☐ TANKER   ☐ DUMP   ☐ TOW   ☐ CAR   ☒ OTHER

IF CLAIMANT IS A CONTRACT DRIVER, CONTACT INFORMATION FOR THE OTHER CONTRACTING PARTY:
NAME: Logix Transportation, Inc   STREET ADDRESS: 2950 Long Lake Road
TELEPHONE:   CITY, STATE, ZIP CODE: Roseville, MN 55113

### ACCIDENT INFORMATION

DATE OF ACCIDENT (Month/Day/Year): 09/01/2016   TIME OF ACCIDENT:   AM   PM

ACCIDENT LOCATION: I-77 East Exit 65 in Chester County, South Carolina

HOW THE ACCIDENT HAPPENED: hit 18 wheeler + several cars, crossed midline + hit logging truck

WHAT CLAIMANT WAS DOING AT THE TIME OF THE ACCIDENT: driving

IF CLAIMANT IS REPRESENTED BY AN ATTORNEY:
ATTORNEY NAME: David B. Consiglio, Esquire   STREET ADDRESS: 720 S. Atherton St, Ste 201

TELEPHONE: 814-234-1500   CITY, STATE, ZIP CODE: State College, PA 16801

WERE YOU

WERE YOU UNDER DISPATCH AT THE TIME OF THE ACCIDENT? ☒ YES ☐ NO  IF YES, WHO WERE YOU UNDER DISPATCH TO? NAME: Have not received log book yet   TELEPHONE: (   )

ADDRESS   **PLEASE ATTACH A COPY OF YOUR LOG BOOK**

HAS THE CLAIMANT FILED AN INSURANCE CLAIM WITH HIS/HER AUTOMOBILE OR OTHER INSURANCE CARRIER IN
CONNECTION WITH THE ACCIDENT: ☒ YES ☐ NO
IF THE CLAIMANT DOES FILE AN INSURANCE CLAIM, THE CLAIMANT MUST REPORT THAT CLAIM TO THE COMPANY



# *Inter-Americas Insurance Corp., Inc.*

*P.O. Box 9510, Wichita, Kansas 67277-0510*
*• Telephone: (316) 794-2200  • Fax: 316-794-8470*
### *Administrators for Atlantic Specialty Insurance Company*

HAS THE CLAIMANT FILED A LEGAL CLAIM AGAINST ANOTHER PARTY IN CONNECTION WITH THE ACCIDENT?
☐ YES ☒ NO
IF THE CLAIMANT DOES FILE A LEGAL CLAIM, THE CLAIMANT MUST REPORT THAT CLAIM TO THE COMPANY.



# *Inter-Americas Insurance Corp., Inc.*

*P.O. Box 9510, Wichita, Kansas 67277-0510*
• *Telephone: (316) 794-2200* • *Fax: 316-794-8470*
*Administrators for Atlantic Specialty Insurance Company*

**INJURY INFORMATION**

FATALITY:
☒ YES ☐ NO

ALL INJURIES CLAIMANT SUFFERED IN THE ACCIDENT REPORTED ON THIS CLAIM FORM OR IF CLAIM IS DUE TO ILLNESS, PLEASE LIST ALL DISABLING CONDITIONS:

| | |
|---|---|
| HAS CLAIMANT BEEN UNABLE TO WORK?<br>☐ YES ☐ NO | IF SO, ON WHAT DATE WAS CLAIMANT FIRST UNABLE TO WORK? |
| HAS CLAIMANT RETURNED TO WORK?<br>☐ YES ☐ NO | IF SO, ON WHAT DATE DID CLAIMANT RETURN TO WORK? |

IF CLAIMANT HAS NOT RETURNED TO WORK, ON WHAT DATE DOES CLAIMANT EXPECT TO RETURN TO WORK?

IF CLAIMANT IS CURRENTLY NOT WORKING, PLEASE EXPLAIN WHY:

| | |
|---|---|
| DID CLAIMANT RECEIVE TREATMENT FOR THE INJURIES REPORTED HERE? ☐ YES ☐ NO | IF SO, DATE OF FIRST TREATMENT: |
| IS CLAIMANT STILL RECEIVING TREATMENT FOR THE INJURIES REPORTED HERE? ☐ YES ☐ NO | FROM WHOM: |

**PLEASE ATTACH** COPIES OF PRIOR YEAR'S FEDERAL TAX RETURN WITH SCHEDULES OR 1099'S, FORM W2 OR OTHER SIMILAR WAGE REPORTING DOCUMENTS.

**HEALTHCARE PROVIDER INFORMATION**

PLEASE LIST ALL HOSPITALS, PHYSICIANS, CLINICS, AND OTHER HEALTHCARE PROVIDERS FROM WHOM CLAIMANT HAS RECEIVED TREATMENT FOR THE INJURIES REPORTED HERE:

| PROVIDER: | TELEPHONE NUMBER: | |
|---|---|---|
| PROVIDER'S ADDRESS: | | |
| TREATMENT DATE(S): | | |

| PROVIDER: | TELEPHONE NUMBER: | |
|---|---|---|
| PROVIDER'S ADDRESS: | | |
| TREATMENT DATE(S): | | |

| PROVIDER: | TELEPHONE NUMBER: | |
|---|---|---|
| PROVIDER'S ADDRESS: | | |
| TREATMENT DATE(S): | | |

 **Inter-Americas Insurance Corp., Inc.**

*P.O. Box 9510, Wichita, Kansas 67277-0510*

● *Telephone: (316) 794-2200   ● Fax: 316-794-8470*

**Administrators for Atlantic Specialty Insurance Company**

| PROVIDER: | TELEPHONE NUMBER: |
|---|---|
| PROVIDER'S ADDRESS: | |
| TREATMENT DATE(S) | |

PLEASE LIST ANY ADDITIONAL HEALTHCARE PROVIDERS, ADDRESSES, AND TREATMENT DATES ON A SEPARATE SHEET OF PAPER.



# Inter-Americas Insurance Corp., Inc.

P.O. Box 9510, Wichita, Kansas 67277-0510
● Telephone: (316) 794-2200  ● Fax: 316-794-8470
**Administrators for Atlantic Specialty Insurance Company**

**PRIOR MEDICAL HISTORY**

FOR ALL PREVIOUS SURGERIES, HOSPITALIZATIONS, AND INJURIES OR ILLNESSES SERIOUS ENOUGH TO PREVENT THE CLAIMANT FROM WORKING. PLEASE PROVIDE THE FOLLOWING INFORMATION:

DATE:                          NATURE OF SURGERY, HOSPITALIZATION, INJURY OR ILLNESS

WAS CLAIMANT PAID BENEFITS AS A RESULT OF THAT INCIDENT?  ☐ YES  ☐ NO

IF SO, BY WHOM (for example, truck lessor, employer, insurance company, etc.):
   NAME:

   ADDRESS:

---

DATE:                          NATURE OF SURGERY, HOSPITALIZATION, INJURY OR ILLNESS

WAS CLAIMANT PAID BENEFITS AS A RESULT OF THAT INCIDENT?  ☐ YES  ☐ NO

IF SO, BY WHOM (for example, truck lessor, employer, insurance company, etc.):
   NAME:

   ADDRESS:

---

DATE:                          NATURE OF SURGERY, HOSPITALIZATION, INJURY OR ILLNESS

WAS CLAIMANT PAID BENEFITS AS A RESULT OF THAT INCIDENT?  ☐ YES  ☐ NO
IF SO, BY WHOM (for example, truck lessor, employer, insurance company, etc.):
   NAME:

   ADDRESS:

---

DATE:                          NATURE OF SURGERY, HOSPITALIZATION, INJURY OR ILLNESS

WAS CLAIMANT PAID BENEFITS AS A RESULT OF THAT INCIDENT?  ☐ YES  ☐ NO

IF SO, BY WHOM (for example, truck lessor, employer, insurance company, etc.):
   NAME:

   ADDRESS:

PLEASE LIST ANY ADDITIONAL SURGERY AND HOSPITALIZATION AND INJURY OR ILLNESS SERIOUS ENOUGH TO PREVENT YOU FROM WORKING, ALONG WITH CONTACT INFORMATION FOR ANYONE WHO PAID THE CLAIMANT BENEFITS IN CONNECTION WITH THAT INCIDENT, ON A SEPARATE SHEET OF PAPER.

**PRIOR PHYSICIAN TREATMENT**

PLEASE LIST ALL PHYSICIANS SEEN BY THE CLAIMANT IN THE LAST TEN YEARS: Advanced Urgent Care



# *Inter-Americas Insurance Corp., Inc.*

*P.O. Box 9510, Wichita, Kansas 67277-0510*

*● Telephone: (316) 794-2200   ● Fax: 316-794-8470*

**Administrators for Atlantic Specialty Insurance Company**

PHYSICIAN NAME:                                    NATURE OF TREATMENT:

ADDRESS: 2615 E. college Ave.
          state college, PA 16801

TELEPHONE: 814 - 308 - 8155

WHO PAID THIS PHYSICIAN'S BILL?



# Inter-Americas Insurance Corp., Inc.

P.O. Box 9510, Wichita, Kansas 67277-0510
• Telephone: (316) 794-2200   • Fax: 316-794-8470
**Administrators for Atlantic Specialty Insurance Company**

| PLEASE LIST ALL PHYSICIANS SEEN BY THE CLAIMANT IN THE LAST TEN YEARS: (CONTINUED) |
|---|

PHYSICIAN NAME:                                   NATURE OF TREATMENT:

ADDRESS:

TELEPHONE:

WHO PAID THIS PHYSICIAN'S BILL?

---

PHYSICIAN NAME:                                   NATURE OF TREATMENT:

ADDRESS:

TELEPHONE:

WHO PAID THIS PHYSICIAN'S BILL?

---

PHYSICIAN NAME:                                   NATURE OF TREATMENT:

ADDRESS:

TELEPHONE:

WHO PAID THIS PHYSICIAN'S BILL?

---

PLEASE LIST ANY OTHER PHYSICIANS SEEN BY THE CLAIMANT IN THE LAST TEN YEARS, ALONG WITH ADDRESSES AND WHO PAID THE BILLS, ON A SEPARATE SHEET OF PAPER.

## CURRENT BENEFITS

IS CLAIMANT CURRENTLY RECEIVING ANY INCOME BENEFITS, SUCH AS SOCIAL SECURITY, DISABILITY, PIP, ETC?
☐ YES ☐ NO

IF YES, PLEASE PROVIDE THE FOLLOWING INFORMATION ABOUT THOSE BENEFITS.

COMPANY NAME:                              TYPE OF BENEFIT:

ADDRESS:                                   MONTHLY BENEFIT AMOUNT:

TELEPHONE:                                 CLAIM NUMBER:

                                           POLICY NUMBER:

IF THE CLAIMANT SUBSEQUENTLY RECEIVES INCOME BENEFITS, SUCH AS SOCIAL SECURITY, DISABILITY, PIP, ETC., THE CLAIMANT MUST REPORT RECEIPT OF THOSE INCOME BENEFITS TO US.



# *Inter-Americas Insurance Corp., Inc.*

*P.O. Box 9510, Wichita, Kansas 67277-0510*
*● Telephone: (316) 794-2200   ● Fax: 316-794-8470*
**Administrators for Atlantic Specialty Insurance Company**

OTHER MEDICAL INSURANCE COVERAGE:

COMPANY NAME:                    TELEPHONE:

ADDRESS:

COMPANY NAME:                    TELEPHONE:

ADDRESS:

 **Inter-Americas Insurance Corp., Inc.**

P.O. Box 9510, Wichita, Kansas 67277-0510
● Telephone: (316) 794-2200  ● Fax: 316-794-8470
*Administrators for Atlantic Specialty Insurance Company*

**CLAIMANT'S OCCUPATION INFORMATION**

OCCUPATION: _Driver/owner_

| HOURS WORKED PER DAY: _Per dis patch_ | DAYS WORKED PER WEEK: | MILES DRIVEN PER YEAR: |
|---|---|---|

ESTIMATED PERCENT OF TIME SPENT ON EACH DUTY BELOW (MUST TOTAL 100%)

SITTING _90%_     WALKING _5%_     STOOPING_____     PUSHING_____     CARRYING_____

STANDING _5%_     CLIMBING_____     BENDING_____     LIFTING_____     TARPING/BINDING_____

| ESTIMATED AVERAGE WEIGHT LIFTED: | ESTIMATED MAXIMUM WEIGHT LIFTED: |
|---|---|
| ESTIMATED AVERAGE WEIGHT CARRIED: | ESTIMATED MAXIMUM WEIGHT CARRIED: |

**EDUCATION / WORK EXPERIENCE**

SCHOOL/COLLEGE/OTHER ORGANIZATION:

TYPE OF EDUCATION/TRAINING:

WHEN RECEIVED:

SCHOOL/COLLEGE/OTHER ORGANIZATION:

TYPE OF EDUCATION/TRAINING:

WHEN RECEIVED:

| EMPLOYER: | DATES WORKED: |
|---|---|
| TYPE OF WORK: | |

| EMPLOYER: | DATES WORKED: |
|---|---|
| TYPE OF WORK: | |

| EMPLOYER: | DATES WORKED: |
|---|---|
| TYPE OF WORK: | |

| EMPLOYER: | DATES WORKED: |
|---|---|
| TYPE OF WORK: | |

Fraud Notice:
Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Claimant Signature: _Linda Kay Kimble_     Date: _12-15-16_



# Inter-Americas Insurance Corp., Inc.

P.O. Box 9510, Wichita, Kansas 67277-0510
• *Telephone: (316) 794-2200* • *Fax: 316-794-8470*
**Administrators for Atlantic Specialty Insurance Company**

**ATTACHED ARE TWO MEDICAL AUTHORIZATIONS AND A CONSENT FOR RELEASE OF INFORMATION.  PLEASE SIGN BOTH AUTHORIZATIONS (pages 11 and 12) AND THE CONSENT FORM (page 15) AND RETURN THEM ALONG WITH THE CLAIM FORM.**

MEDICAL AUTHORIZATION

I HEREBY AUTHORIZE ANY HOSPITAL, PHYSICIAN, OR OTHER PERSON TO FURNISH THE INSURANCE COMPANY OR ITS REPRESENTATIVES OR TO THE OWNER OPERATOR INDEPENDENT DRIVER'S ASSOCIATION OR ITS REPRESENTATIVES ANY AND ALL INFORMATION WITH RESPECT TO ANY ILLNESS OR INJURY, MEDICAL HISTORY, CONSULTATION, PRESCRIPTIONS, OR TREATMENT, AND COPIES OF ALL HOSPITAL OR MEDICAL RECORDS REGARDING

Please Print Claimant's Name  *Norman E Kimble c/o Linda Kay Kimble, Administratrix of the Estate of Norman E. Kimble*

I HEREBY AUTHORIZE THE INSURANCE COMPANY OR ITS REPRESENTATIVES TO RELEASE THE INFORMATION DESCRIBED ABOVE TO ANY EXPERT, INVESTIGATOR, PHYSICIAN, MEDICAL PRACTITIONER, HOSPITAL, MEDICAL OR MEDICAL-RELATED FACILITY, INSURANCE COMPANY, REINSURER, PLAN ADMINISTRATOR, PLAN SPONSOR OR EMPLOYER FOR THE PURPOSE OF INVESTIGATING AND/OR ADJUDICATING THIS CLAIM FOR BENEFITS. A PHOTOSTATIC COPY OF THIS AUTHORIZATION SHALL BE CONSIDERED AS EFFECTIVE AS THE ORIGINAL.

SIGNATURE  *Linda Kay Kimble*          DATE  *12-15-16*



# Inter-Americas Insurance Corp., Inc.

P.O. Box 9510, Wichita, Kansas 67277-0510
● *Telephone: (316) 794-2200*  ● *Fax: 316-794-8470*
**Administrators for Atlantic Specialty Insurance Company**

Authorization for Release of Information to the administrator(s) for Atlantic Specialty Insurance Company

| | |
|---|---|
| Name of Claimant: Linda Kay Kimble, Administratrix of the Estate of Norman E. Kimble | |
| Date of Birth: 07/07/1955 | |
| Social Security Number: ▓▓▓▓▓▓▓▓▓ | |

I hereby authorize any health plan, physician, health care profession, hospital, clinic, laboratory, pharmacy, medical facility or other health care provider that has provided treatment, payment, or services to me or on my behalf ("My Providers") to disclose my entire medical record and any other health information concerning me to Atlantic Specialty Insurance Company, its administrator, agents, employees, and representatives. This includes information on the diagnosis and treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco.

I authorize any insurance company, the Social Security Administration, or other person or institutions to provide any information, data, or records relating to my Social Security, Occupational Accident, credit, financial, earnings, activities or employment history to the administrative insurance company named above.

Unless limits* are shown below, this form pertains to all of the records listed above.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to the authorization and I instruct My Providers to release and disclose my entire medical record without restriction.

This information is to be disclosed under this Authorization so that the administrator may administer claims and determine or fulfill responsibility for coverage and provision of benefits.

This authorization shall remain in force for 24 months following the date of my signature below, while the coverage is in force, except to the extent that state law imposes a shorter duration. A copy of this authorization is as valid as the original. I understand that I have the right to revoke this authorization in writing, at any time, by sending a written request for revocation to P.O. Box 9510, Wichita, KS 67277. I understand that a revocation is not effective to the extent that any of My Providers has relied on this Authorization or to the extent that the administrator(s) for Atlantic Specialty Insurance Company, its administrator, agents, employees, and representatives have a legal right to contest a claim under any insurance policy or to contest the policy itself. I understand that any information that is disclosed pursuant to this authorization may be redisclosed and is no longer covered by federal rules governing privacy and confidentiality of health information.

I understand that if I refuse to sign this authorization to release the entire medical record, the administrative insurance company many not be able to process my claim for benefits and may not be able to make any benefit payments. I understand that I have the right to receive a copy of this authorization.

*Limits, if any:

| | | |
|---|---|---|
| | | |

| | | |
|---|---|---|
| Claimant Signature: *Linda Kay Kimble* | Date: *12-15-16* | Date of Birth: 07/07/1955 |
| | Phone Number: | |
| Name (please print): Linda Kay Kimble | | |
| Address: PO Box 162, Robessburg, PA 16872 | | |

This authorization is intended to comply with the HIPAA Privacy Rule.



# Inter-Americas Insurance Corp., Inc.

*P.O. Box 9510, Wichita, Kansas 67277-0510*
*● Telephone: (316) 794-2200   ● Fax: 316-794-8470*

*Administrators for Atlantic Specialty Insurance Company*
**Please send the completed claim form to P.O. Box 9510, Wichita, KS 67277**

# *Inter-Americas Insurance Corp., Inc.*

*P.O. Box 9510, Wichita, Kansas 67277-0510*

• *Telephone: (316) 794-2200* • *Fax: 316-794-8470*

***Administrators for Atlantic Specialty Insurance Company***

**Social Security Administration**

Consent for Release of Information

Please read these instructions carefully before completing this form.

| | |
|---|---|
| **When to Use This form** | Compete this form only if you want the Social Security Administration to give information or records about you to an individual or group (for example, a doctor or an insurance company). <br><br> **Natural or adoptive parents or a legal guardian, acting on behalf of a minor**, who want us to release the minor's: <br> ' nonmedical records, should use this form. <br> ' medical records, should not use this form, but should contact us. <br><br> Note: Do not use this form to request information about your earnings or employment history. To do this, complete Form SSA-75050-F4. You can get this form at any Social Security office. |
| **How to Complete This Form** | This consent form must be completed and signed only by: <br> ' the person to whom the information or record applies, or <br> '' the parent or legal guardian of a minor to whom the nonmedical information applies , or <br> the legal guardian of a legally incompetent adult to whom the information applies. <br> To complete this form: <br> ' Fill in the name, date of birth, and Social Security Number of the person to whom the information applies <br> ' Fill in the name and address of the individual or group to which we will send the information <br> ' Fill in the reason you are requesting the information. <br> ' Check the type(s) of information you want us to release. <br> ' Sign and date the form. If you are not the person whose record we will release, please state your relationship to that person. |

**PRIVACY ACT NOTICE:** The Privacy Act Notice requires us to notify you that we are authorized to collect this information by section 3 of the Privacy Act. You do not have to provide the information requested. However, we cannot release information or records about you to another person or organization without your consent for release of information. Your records are confidential. We will release only records that you authorize, and only to persons or organizations who you authorize to receive that information.

**PAPERWORK REDUCTION ACT STATEMENT:** This information collection meets the clearance requirements of 44 U.S.C. §3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 3 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR BRING THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE. The office is listed under U.S. Government agencies in your telephone directory or you may call Social Security at 1-800-772-1213.** *You may send comments on our time estimate above to: SSA, 6401 Security Blvd., Baltimore, MD 212345-6401. Send only comments relating to our time estimate to this address, not the completed form.*

Form **SSA-3288**   (5-2007) EF (5-2007)

 **Inter-Americas Insurance Corp., Inc.**
*P.O. Box 9510, Wichita, Kansas 67277-0510*
  *• Telephone: (316) 794-2200  • Fax: 316-794-8470*
**Administrators for Atlantic Specialty Insurance Company**

**Social Security Administration**
Consent for Release of Information

Please read these instructions carefully before completing this form.

**TO:**  Social Security Administration

| | | |
|---|---|---|
| Name | Date of Birth | Social Security Number |

I authorize the Social Security Administration to release information or records about me to:

NAME                                              ADDRESS

\_\_\_Atlantic Specialty Insurance Company_____ PO
Box 9510, Wichita, Kansas 67277-0510_____
  and its agents, employees and representatives_____
  Inter-Americas Insurance Corporation, Inc. as administrator_____

I want this information released because:
  my insurance carrier needs to review the file at any and all
  levels of my Social Security Disability Claim
(There may be a charge for releasing information.)

Please release the following information:
\_\_\_✓\_\_\_  Social Security Number
\_\_\_✓\_\_\_  Identifying information (includes date and place of birth, parents' names)
\_\_\_✓\_\_\_  Monthly Social Security benefit amount
\_\_\_✓\_\_\_  Monthly Supplemental Security Income payment amount
\_\_\_✓\_\_\_  Information about benefits/payments I received from \_\_all\_\_ to \_\_\_\_\_
\_\_\_✓\_\_\_  Information about my Medicare claim/coverage from \_\_all\_\_ to \_\_\_\_\_
          (specify) _____
\_\_\_✓\_\_\_  Medical records
\_\_\_✓\_\_\_  Record(s) from my file (specify \_all_____

_____  Other (specify) _____

I am the individual to whom the information/record applies or that person's parent (if a minor) or legal guardian. I know that if I make any representation which I know is false to obtain information from Social Security records, I could be punished by a fine or imprisonment or both.

Signature:_____
(Show signatures, names and addresses of two people if signed by mark.)

Date:_____  Relationship:_____



# *Inter-Americas Insurance Corp., Inc.*

*P.O. Box 9510, Wichita, Kansas 67277-0510*

● *Telephone: (316) 794-2200* ● *Fax: 316-794-8470*

### *Administrators for Atlantic Specialty Insurance Company*
### IMPORTANT NOTICE

<u>To Alaska Claimants</u>
A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

<u>To Arizona Claimants</u>
For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

<u>To Claimants in Arkansas, Louisiana, and States Not Specifically Listed in This Notice</u>
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

<u>To California Claimants</u>
For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

<u>To Colorado Claimants</u>
It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

<u>To Delaware Claimants</u>
Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

<u>To Washington, D.C. Claimants</u>

WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

<u>To Florida Claimants</u>
Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

<u>To Indiana Claimants</u>
A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

<u>To Kentucky Claimants</u>
Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

<u>To Maine, Tennessee, Virginia, and Washington Claimants</u>
It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

<u>To Minnesota Claimants</u>
A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

<u>To New Hampshire Claimants</u>
Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

To New Jersey Claimants
Any person who knowingly files a statement of
claim containing any false or misleading
information is subject to criminal and civil
penalties.

To New Mexico Claimants
ANY PERSON WHO KNOWINGLY PRESENTS
A FALSE OR FRAUDULENT CLAIM FOR
PAYMENT OF A LOSS OR BENEFIT OR
KNOWINGLY PRESENTS FALSE
INFORMATION IN AN APPLICATION FOR
INSURANCE IS GUILTY OF A CRIME AND
MAY BE SUBJECT TO CIVIL FINES AND
CRIMINAL PENALTIES.

To New York Claimants
Any person who knowingly and with intent to
defraud any insurance company or other person
files an application for insurance or statement of
claim containing any materially false information,
or conceals for the purpose of misleading,
information concerning any fact material thereto,
commits a fraudulent insurance act, which is a
crime, and shall also be subject to a civil penalty
not to exceed five thousand dollars and the
stated value of the claim for each such violation.

To Ohio Claimants
Any person who, with intent to defraud or
knowing that he is facilitating a fraud against an
insurer, submits an application or files a claim
containing a false or deceptive statement is
guilty of insurance fraud.

To Oklahoma Claimants
WARNING: Any person who knowingly, and with
intent to injure, defraud or deceive any insurer,
makes any claim for the proceeds of an
insurance policy containing any false,
incomplete or misleading information is guilty of
a felony.

To Pennsylvania Claimants
Any person who knowingly and with intent to
defraud any insurance company or other person
files an application for insurance or statement of
claim containing any materially false information
or conceals for the purpose of misleading,
information concerning any fact material thereto
commits a fraudulent insurance act, which is a
crime and subjects such person to criminal and
civil penalties.

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: _John W. Lhota_

Signature: _(signature)_

Name: _John W. Lhota_

Attorney No. (if applicable): _PA 319466_